STATE of Minnesota, Respondent,

v.

William Joseph ODENBRETT,
II, Appellant.

Nos. CX–83–148, C1–83–149.

Supreme Court of Minnesota.

May 25, 1984.

Richard D. Genty, Winsted, for appellant.

Hubert H. Humphrey III, Atty. Gen., Norman B. Coleman, Jr., Darrell J. Davis, Sp. Asst. Attys. Gen., St. Paul, Peter J. Kasal, Glencoe, for respondent.

SIMONETT, Justice.

Defendant-appellant seeks reversal of his conviction of two counts of criminal sexual conduct in the second degree on the ground that the evidence of his guilt should have been excluded because it was obtained or derived from information provided by personnel at a private health care center in violation of either defendant's physician-patient privilege or of his right to privacy. We hold that the evidence was properly received and affirm.

On April 14, 1982, defendant William Odenbrett, age 27, married and illiterate, voluntarily admitted himself to the young adult mental health unit of the Golden Valley Health Center, complaining of marital and gastrointestinal problems. During the course of therapy treatment, he revealed to the therapists that he had sexually abused the 4-year-old niece of his upstairs neighbor. The Golden Valley staff members reported this information to the McLeod County Social Service Center pursuant to the Child Abuse Reporting Act. The report gave the patient's name, William Odenbrett, but did not give the name of the child. Social Services, in turn, notified the McLeod County Sheriff's Department.

Thereafter, a deputy sheriff interviewed defendant at the Golden Valley Health Center, then again at defendant's residence, and finally, a third time, at the sheriff's office. On each occasion defendant, after being advised of his *Miranda* rights, gave a voluntary statement admitting sexual incidents with the 4-year-old girl during February 1982 and also with three other girls ranging in age from 9 to 13 years between July 1980 and the winter of 1981. The deputy sheriff interviewed defendant's wife, who stated defendant had admitted the incidents to her, and also interviewed some of the children involved and their parents, all of whom provided corroborative evidence. Two complaints were filed alleging violations of Minn.Stat. § 609.-343(a) (1982).

After defendant's motions to suppress evidence and to dismiss the complaints were denied, defendant waived a jury trial and the consolidated cases were submitted to the trial court on a stipulation of facts. It was stipulated that all of the persons who gave statements would testify as in their statements, except defendant would not himself testify. On October 12, 1982,

the trial court found defendant guilty of two counts of criminal sexual conduct in the second degree. Imposition of sentence was stayed and defendant was placed on probation for 0 to 10 years.

On appeal, defendant argues that the Child Abuse Reporting Act, as it read in 1982, did not authorize disclosure of the patient's incriminatory statements by the Golden Valley staff to the McLeod County authorities, and, consequently, disclosure of that information was in violation of defendant's physician-patient medical privilege. Defendant then argues that the follow-up incriminating statements obtained by the deputy sheriff were "fruit of the poisonous tree," *i.e.*, a consequence of the medical privilege violation, and that the statements, together with all evidence adduced therefrom, should have been suppressed. On the other hand, if the Golden Valley disclosure was not a violation of the Child Abuse Reporting Act, defendant then contends that the provision of the Act permitting such disclosure and its evidentiary use is unconstitutional as a violation of defendant's constitutional right of privacy.

## I.

The first issue is whether there has been a violation of defendant's medical privilege, *i.e.*, the privileges contained in Minn.Stat. § 595.02(4), (7) (1982), prohibiting evidentiary use of communications arising between a patient and his physician, psychologist or registered nurse. In *State v. Andring*, 342 N.W.2d 128 (Minn.1984), we held these privileges include communications made in confidential group therapy sessions which are part of the patient's diagnosis and treatment.

■ The issue before us is primarily one of statutory construction, involving basical-

ly the extent to which the Child Abuse Reporting Act abrogates the scope of the medical privilege statute. We will construe the Act narrowly to "achieve the purposes of the reporting act without destroying the benefits that result when those who maltreat children seek confidential therapy sessions." *Andring*, 342 N.W.2d at 132–33.

Under the Act, health care personnel, such as at Golden Valley Health Center, are required to report to the local authorities when there is "reasonable cause to believe a child is being * * * physically or sexually abused." Minn.Stat. § 626.556, subd. 3 (1982). Subdivision 7 of that section, in effect when Golden Valley made its report, reads in part:

> Any report shall be of sufficient content to identify the child, the parent, guardian, or other person responsible for his care, the nature and extent of the child's injuries and the name and address of the reporter.

■ Defendant Odenbrett contends that the statute is silent on reporting the identity of the perpetrator of the sexual abuse and, consequently, the Golden Valley staff violated the statute in disclosing his name. We disagree. The sexual abuse to be reported is defined as that abuse which involves "subjection by the child's parents, guardian, or person responsible for the child's care." Minn.Stat. § 626.556, subd. 2(a) (1982). Here the record shows that defendant Odenbrett was a "person responsible for the child's care" because he was babysitting the child; consequently, in the context of this case, the Act authorized disclosure of Odenbrett's identity.[1]

■ Defendant next observes that subdivisions 7 and 8 authorize disclosure of only the nature and extent of "the child's injuries." He argues that the child sustained

---

1. In 1983 the Child Abuse Reporting Act, Minn. Stat. § 626.556, was amended. Under subdivision 7, the phrase requiring reporting of "the patent, guardian, or other person responsible" was changed to require the reporting of "any person believed to be responsible for the abuse." The definition of "sexual abuse," contained in subdivision 2, was changed to mean that misconduct which involved subjection by "a person responsible for the child's care," and this latter phrase was defined to mean a parent, guardian, school teacher, school administrator, or other lawful custodian, including, specifically, those who have "short-term care responsibilities including * * * baby sitting." Act of June 14, 1983, ch. 345, 1983 Minn.Laws 2381, 2388 (codified at Minn.Stat. § 626.556, subds. 2, 7 (1983 Supp.)).

no injuries, at least no physical injuries, and therefore the Golden Valley staff report of his conduct with the children was unauthorized. We disagree. We think that the term "injury," when used here in the context of sexual abuse, includes psychic injury. If the legislature had intended to limit the term to only physical injury, it would have said so.

■ We hold, therefore, that the sexual abuse information disclosed by the Golden Valley staff to the local welfare agency was authorized by the Child Abuse Reporting Act.[2] This being so, we further hold that there was no violation of defendant's medical privilege. Information which is sheltered by the statutory medical privilege loses its privileged status to the extent its disclosure is authorized by the Child Abuse Reporting Act. This is our holding in *Andring*, 342 N.W.2d at 132. (The Reporting Act abrogates the statutory medical privilege to the extent that evidentiary use is made of information required to be contained in the maltreatment report.)

## II.

Subdivision 8 of the Child Abuse Reporting Act, § 626.556, provides:

No evidence regarding the child's injuries shall be excluded in any proceeding arising out of the alleged neglect or physical or sexual abuse on the grounds of either a physician-patient or husband-wife privilege.

On appeal, defendant Odenbrett claims this statute must be declared unconstitutional because it violates his constitutional right of privacy. In other words, defendant argues that if his statutory medical privilege has been abrogated by legislative enactment—which we have here held—there remains a more fundamental, underlying constitutional right of privacy of which he may not be legislatively deprived.

■ This is not an easy issue to resolve, assuming it needs to be resolved here. Historically, the medical privilege, unknown at common law, has been a creature of statute[3] and thought to be only of statutory origin. *State v. Enebak*, 272 N.W.2d 27, 30 (Minn.1978) ("the medical privilege is a statutory creation and not a constitutional right"). More recently, since *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), a constitutional right of privacy has emerged, although yet only in its formative stages. While the United States Supreme Court has not addressed the issue of whether there is a constitutional right of privacy in communications made in psychotherapy, a number of other courts have,[4] and several commentators have suggested that the psychotherapy privilege has a constitutional basis in the right of privacy. *See, e.g.*, 2 D. Louisell & C. Mueller, *Federal Evidence* § 216 at 616 (1978); Smith, *Constitutional Privacy in Psychotherapy*, 49 Geo.Wash.L.Rev. 1 (1980).

---

**2.** Two written reports were submitted by the Golden Valley staff. One report dealt with defendant's activities with the minor child; the other, addressed "To whom it may concern," relates statements made by Mr. Odenbrett during his therapy sessions about intimacies with an adult woman friend. Obviously, this second disclosure was not authorized by the Child Abuse Reporting Act and was protected medical privilege information. This disclosure, though distressing, has no bearing on the conviction here.

**3.** Our first medical privilege statute appeared in 1858. Minn.Pub.Stat. ch. 84, § 53(4) (1858). The current language of our physician-patient privilege was enacted in 1919. *See* Act of April 25, 1919, ch. 513, § 1, 1919 Minn.Laws 689 (current version at Minn.Stat. § 595.02(4) (1982)). Since then, in more recent years, the

psychologist and registered nurse privileges have been added. *See generally State v. Staat*, 291 Minn. 394, 396–97, 192 N.W.2d 192, 195–96 (1971).

**4.** *See generally People v. Stritzinger*, 34 Cal.3d 505, 668 P.2d 738, 194 Cal.Rptr. 431 (1981); *Tarasoff v. Regents of the University of California*, 17 Cal.3d 425, 551 P.2d 334, 131 Cal.Rptr. 14 (1976); *In re Lifschutz*, 2 Cal.3d 415, 467 P.2d 557, 85 Cal.Rptr. 829 (1970). Other cases include *In re Zuniga*, 714 F.2d 632 (6th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983); *Caesar v. Mountanos*, 542 F.2d 1064 (9th Cir.1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977). These cases illustrate a variety of situations and none is precisely in point, but they do point out the difficulty of the problem.

To consider the constitutional issue would require here a balancing of the patient's interest in his privacy with the state's need to intrude on that privacy.[5]

■ We do not, however, reach the constitutional issue. We note, first, that a claim of privacy was not expressly or independently raised before the trial court. At trial, based on the stipulation, defendant argued only that violation of his medical privilege required application of the fruit-of-the-poisonous-tree doctrine under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); that "his rights under the Fifth Amendment" were violated; and therefore that he had been denied due process. Not until here on appeal does defendant in his brief specifically assert a constitutional right of privacy. While it has been said by Justice Douglas that the right of privacy may emanate from the "penumbras" of various constitutional guarantees, *Griswold*, 381 U.S. at 484–85, 85 S.Ct. at 1681–82, we do think, if the issue was intended to be raised in the trial court, it should have been done explicitly. We decline, therefore, to address this issue when it was neither adequately raised nor considered below, and where, apparently because it was not raised below, the record inadequately presents the issue.

■ Further, we see no need to undertake a balancing analysis of the competing interests of the state and the patient in this case, because even assuming arguendo a constitutional right of privacy and a breach of that right to which the state was a party, it cannot be said on this record that the subsequent statements obtained by the deputy sheriff were tainted. Even though the Golden Valley disclosure let "the cat out of the bag," subsequent incriminating statements are not necessarily tainted thereby. *United States v. Bayer*, 331 U.S. 532, 540, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1947); *State v. Wiberg*, 296 N.W.2d 388,

393–94 (Minn.1980); *State v. Raymond*, 305 Minn. 160, 168–71, 232 N.W.2d 879, 884–85 (1975). Here there was a lapse of 8 days before the deputy sheriff sought a statement; defendant was read his *Miranda* rights each time he gave a statement to the deputy and it appears he validly waived those rights; and there is no evidence of any prejudicial coercion on defendant to confess again—indeed, defendant went on to relate instances of abuse involving children other than the one mentioned in the Golden Valley report. In light of the totality of the circumstances, we do not believe the statements obtained by the deputy sheriff could be characterized as tainted, even if the *Wong Sun* rationale were applicable. We hold that the statements obtained by the deputy sheriff and the other evidence adduced therefrom were admissible and are sufficient to sustain the conviction.

Affirmed.

---

5. The state, of course, has a compelling interest in identifying and protecting victims of child abuse. Defendant questions whether this interest is furthered by a reporting act which might discourage pedophiles from seeking needed therapy. Defendant argues at best the reporting act should be construed to protect the victims but not to convict the offenders, and that his privacy should be respected where, as here, the offender voluntarily sought treatment and was never told his confidences would not be kept.