**MUTUAL OF OMAHA INSURANCE COMPANY, Plaintiff,**

v.

**AMERICAN NATIONAL BANK AND TRUST COMPANY, Executor of the Estate of May V. Wilson; Cerro Gordo Charity; and Laine Memorial Fund, Defendants.**

Civ. No. 3–83–569.

United States District Court,
D. Minnesota,
Fourth Division.

April 30, 1985.

---

Robert S. Cragg, Esq., Cragg & Bailly, Minneapolis, Mn., for Mutual of Omaha Insurance Company.

Jonathan L. Eisenberg, Esq., Pepin, Dayton, Herman, Graham & Getts, Minneapolis, Mn., for American National Bank & Trust Company.

Richard G. Mark, Esq., Michael H. Streater, Esq., Briggs & Morgan, Minneapolis, Mn., for Cerro Gordo Charity and Laine Memorial Fund.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Nonparty Leonard Richards appeals from an order of Magistrate Floyd E. Boline determining the privileged status of medical records of Leonard Richards sought in a deposition subpoena issued by Mutual of Omaha Insurance Company (Mutual of Omaha). Memoranda on the appeal have been submitted by Richards and appellee Mutual of Omaha.[1] Other parties involved in related insurance actions have also submitted memoranda. The Ashawa and Bothnia Trusts, the Elmwood Fund and the Rova Family Fund (family trusts) have submitted a memorandum in support of the appeal of Leonard Richards. The defendant insurance companies in these related actions have submitted memoranda in support of the decision of the Magistrate.

This court in prior orders affirmed the Magistrate's decision to conduct an *in camera* review of the requested documents and denied a stay of that order pending appeal. Magistrate Boline subsequently reviewed the documents and found that of the documents submitted by Dr. Guerrero documents 1, 2, 8, 15, 18, and 19–60 are not privileged and should be produced. The Magistrate also held that portions of documents 16 and 17 are not privileged because they reflect a communication relating to the commission of a future crime. The Magistrate held that of the documents submitted by Golden Valley Health Center, documents 1, 3–48, and 50 are privileged. Documents 49, and 51–54 were held not to be privileged. Documents 2A and 2B are identical to documents 16 and 17 produced by Guerrero and were ordered produced for the same reasons.

This dispute arises out of related actions involving the refusal of insurers to pay insurance proceeds upon the death of May V. Wilson, a named insured under accident insurance policies they issued. Wilson died in May of 1982, the victim of an apparent homicide. Leonard Richards, the half-brother of Wilson, is a suspect in an investigation into her death. The insurance companies raise several defenses to payment, including that the policies were fraudulently procured by Richards or others acting on his behalf in order to obtain benefit from the proceeds paid as a result of Wilson's death. The insurers seek to

---

**1.** Shortly before this order was issued the court received a phone call from counsel for Richards. Counsel requested an opportunity to respond to the insurer's reply memoranda indicating that he had just recently been substituted as counsel. The court informed counsel that no additional briefing would be allowed, noting that the appeal had been pending for some time and that the legal issues raised have been before the court several times and have been fully briefed.

obtain hospital and medical records from Golden Valley Health Center and Dr. James Guerrero. Richards was hospitalized in November of 1977 at Golden Valley Health Center under the care of Dr. Guerrero, a psychiatrist.

## Discussion

*Minn.Stat.* § 595.02(4) establishes a patient-physician privilege:

A licensed physician or surgeon, dentist, or chiropractor shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereof which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity.

Additionally, *Minn.Stat.* § 144.651, subd. 16, provides for the confidentiality of medical records, stating:

Patients and residents shall be assured confidential treatment of their personal and medical records, and may approve or refuse their release to any individual outside the facility.

Numerous documents were found by Magistrate Boline not to fall within the coverage of the privilege because they did not arise out of the professional treatment of Richards. Richards objects "to the determination in the Order classifying any part of the medical records as nonprivileged." Richards argues that all of the communications and medical records were part of a course of treatment and therefore are protected by the privilege.

■ The court has carefully reviewed all of the documents held not to fall within the scope of the privilege and finds that the rulings are proper. The documents do not disclose any information acquired by Dr. Guerrero in his professional treatment of the patient or any opinion of the doctor. These rulings of the Magistrate are not clearly erroneous or contrary to law and should be affirmed.

■ Richards also appeals the Magistrate's decision that portions of certain documents do not fall within the privilege because they relate to the commission of a future crime. The Magistrate applied this rationale to portions of documents 16 and

17 of the items produced by Dr. Guerrero and documents 2A and 2B of the items produced by the Golden Valley Health Center. 16 and 17 are identical to 2A and 2B and are a discharge summary on Leonard Richards prepared by Dr. Guerrero.

In reaching his decision, the Magistrate relied on a 1905 Minnesota case where a woman's request to a physician that he perform an abortion was held to be "nothing more than an open request to the physician to join in a conspiracy to commit a vile crime," and thus, not privileged because it was made in furtherance of a criminal purpose. *McKenzie v. Banks,* 94 Minn. 496, 103 N.W. 497, 498 (Minn.1905). The Magistrate drew further support by analogizing to the attorney-client privilege which has an exception for communications relating to the commission of future crime or fraud.

Mutual of Omaha and the other insurers argue that the Magistrate should be affirmed. They argue that the analogy drawn to the attorney-client privilege is appropriate and cite additional authority for the proposition that a future crime exception to the patient-physician privilege has been adopted in Minnesota. Richards and the family trusts assert that there is no "future crime" exception to the physician-patient privilege in Minnesota and that the circumstances of this case do not merit any departure from the privilege.

■ The rationale behind the physician-patient privilege is the encouragement of the patient to reveal his condition. *Snyker v. Snyker,* 245 Minn. 405, 72 N.W.2d 357, 359 (1955). This rationale is even more persuasive in the context of a psychotherapist whose effectiveness largely depends upon the patient's willingness to talk freely. *See* G. Lilly, *An Introduction to the Law of Evidence* § 93 p. 357–58. The entire process could be crippled if confidentiality were not ensured. *See, e.g., Advisory Committee's Note on Proposed Fed.R. of Evid. 504,* 56 F.R.D. 241, 242. The special need for the privilege in psychotherapy treatment is long recognized and widely supported by courts and commenta-

tors.[2] The District of Columbia Circuit Court of Appeals has stated:

> Many physical ailments might be treated to some degree of effectiveness by a doctor whom the patient did not trust, but a psychiatrist must have his patient's confidence or he can not help him. 'The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that they cannot get help except on that condition.... It would be too much to expect them to do so if they knew that all they say—and all that the psychiatrist learns from what they say may be revealed to the whole world from a witness stand.'

*Taylor v. United States,* 222 F.2d 398, 401 (D.C.Cir.1955), *quoting* Guttmacher & Weihofen, *Psychiatry and the Law* (1952).

The cases cited by the Magistrate and the insurers state no more than the general rule that where the patient's purpose in the consultation is an unlawful one, as to secure an illegal abortion, or conceal a crime, the law withholds the shield of privilege. *Sticha v. Benzick,* 156 Minn. 52, 194 N.W. 752, 753 (1923); *McCormick on Evidence* § 99. This exception does not necessarily extend to the disclosure to a psychotherapist during treatment of a future intent to commit a crime. The patient's purpose in divulging such thoughts may well be to obtain treatment rather than aid in furtherance or concealment of a crime.

Recognized exceptions to the confidentiality of patient-psychotherapist communications have been in narrowly circumscribed situations. In *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), the court held that a psychotherapist may have a duty to warn in instances in which disclosure is necessary to avert danger to others. The Minnesota Supreme Court has indicated that a duty to warn may arise where the necessary special relationship exists and specific threats are made against specific victims. *Cairl v. State,* 323 N.W.2d 20, 25–26 (Minn.1982). In addition, the privilege is not violated to the extent the disclosure is authorized by other statutory provisions passed by the legislature.[3] *State v. Odenbrett,* 349 N.W.2d 265, 268–69 (Minn.1984).

The court has carefully reviewed the record, memoranda, and *in camera* documents and finds that none of the exceptions to the privilege are applicable under the specific circumstances presented. Minnesota does not recognize the broad exception to the patient-psychotherapist privilege urged by the insurers.[4] There may under certain circumstances be an exception to the privilege in situations where a duty to warn arises. *See Cairl v. State,* 323 N.W.2d at 25–26. The court need not determine the exact contours of such exception, however, because the record shows that disclosure is not compelled on this record.

---

**2.** *See, e.g., Caesar v. Mountanos,* 542 F.2d 1064 (9th Cir.1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977); *Robinson v. Magovern,* 83 F.R.D. 79, 91 (W.D.Pa.1979); 2 Weinstein's Evidence § 504, *et seq.* (1982 & Supp. 1984); Slovenko, Psychiatry and a Second Look at the Medical Privilege, 6 Wayne L.Rev. 175 (1960).

**3.** The Minnesota court noted in *Odenbrett* that while the medical privilege has been thought to be only of statutory origin, there may be a constitutional right to privacy in communications made in psychotherapy. *State v. Odenbrett,* 349 N.W.2d 265, 268–69 (Minn.1984).

**4.** In *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), the California legislature had created a specific and limited exception to the psychotherapist-patient privilege in those instances where

> the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger.

No such statutory exception exists in Minnesota.

The privilege and its exceptions are founded on competing policy goals.[5] The policy behind the privilege is to encourage people to seek treatment and in that way to prevent asocial acts. The policy behind the exception for the duty to warn situation is to encourage therapists to make necessary disclosure to prevent harm to third parties. The court is called upon to consider these goals in the circumstances of the individual case and to protect privileged communications unless significant interests outweigh this result. *See Lora v. Board of Education,* 74 F.R.D. 565 (E.D.N.Y.1977) (Weinstein, J.) (psychiatrist-patient privilege is not absolute but is qualified and must be balanced against legitimate and weighty competing private and state interests). The policy to encourage doctors to warn to prevent injuries to others is not implicated so much where injury has already occurred. Disclosure in this case is now unrelated to any existing need to warn.

Here the insurers are attempting to implicate Richards in a fraudulent scheme to procure the many insurance policies and in the 1982 death of Wilson. Even if the *in camera* documents could be interpreted to place on Dr. Guerrero a duty to warn of possible danger to Wilson from Richards in November of 1977, there has been no showing that he would have been required to disclose privileged communications beyond the warning itself. Any required disclosure should be made "discreetly, and in a fashion that would preserve the privacy of his patient to the fullest extent compatible with the prevention of the threatened danger." *Tarasoff v. Regents,* 131 Cal.Rptr. at 27, 551 P.2d at 361. Under the circumstances presented, there is no exception to the psychotherapist-patient privilege that compels the disclosure of these records. The determination of the Magistrate that portions of documents 16 and 17 of the records of Dr. Guerrero and documents 2A and 2B of the records of the Golden Valley

Health Center are not privileged should be reversed.

### ORDER

Accordingly, based on the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. The finding of the Magistrate that portions of documents #16 and #17 of the records of Dr. Guerrero and portions of documents #2A and #2B of the records of Golden Valley Health Center are not privileged is reversed.

2. In all other respects the findings of the Magistrate are affirmed, and those documents designated as not privileged shall be produced.

3. Plaintiff, Mutual of Omaha Insurance Company, may depose Dr. Guerrero, but only as to the information and communications set forth in the documents which have been ordered disclosed.

---

**5.** The policy interests behind the privilege, *Minn.Stat.* § 595.02(4), may well be different from those behind *Minn.Stat.* § 144.651, subd.

16. The latter merely assures "confidential treatment" of records. Court-ordered disclosure arguably does not implicate this statute.