**STATE of Minnesota, Respondent,**

v.

**Toby Lynn GULLEKSON, Appellant.**

**No. C5–85–1647.**

Court of Appeals of Minnesota.

March 11, 1986.

Review Denied May 16, 1986.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Wayne H. Swanson, Polk County Atty., Crookston, for respondent.

C. Paul Jones, Minn. State Public Defender, Mary C. Cade, Asst. Public Defender, Minneapolis, for appellant.

Heard, considered and decided by LESLIE, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

Toby Gullekson was convicted of third-degree murder under Minn.Stat. § 609.195. On appeal he claims that certain inculpatory statements he made were erroneously admitted in violation of the psychologist-patient privilege. We affirm.

## FACTS

As a condition of probation following his guilty plea to a charge of second-degree criminal sexual conduct, Gullekson entered the Intensive Treatment Program for Sexual Aggressives (ITPSA) at the Minnesota Security Hospital in St. Peter. Participants in the program were encouraged by the staff to reveal any secrets that are bothering them that might interfere with their treatment. On September 15, 1984, Gullekson participated in an unsupervised group therapy session. As a result of the meeting, Gullekson and three other group members approached Linn Ford, the therapy group's counselor. Gullekson told Ford that he had entered a building two years earlier in Fertile, Minnesota, with the intent of burglarizing it. Upon gaining entry, Gullekson said, he changed his mind about burglarizing the premises and, on his way out, set some refuse on fire. The next morning he read that a man had died in the fire. This information was volunteered to Ford without any questioning on Ford's part.

Ford told Gullekson that he would have to report the information to Richard Seely, the program director, and that the informa-

tion probably would be reported to Gullekson's probation officer and "legal officials." Gullekson replied that he understood.

Ford relayed the information to Seely and Anne Amundson, assistant program director. On September 17, 1984, Seely, Amundson and Bruce Hawkinson, a staff psychologist, met with Gullekson for the purpose of hearing from him the statements earlier made to Ford. Hawkinson first told Gullekson that anything he said would be reported to the authorities. Gullekson said he understood that and agreed to talk to them. He then related the information he had earlier told Ford.

The information was reported to law enforcement authorities, who determined that there had been a fire in Fertile, Minnesota, on November 20, 1982, in which a man had been killed. Gullekson was charged with third-degree murder.

Gullekson moved to exclude the statements he made on September 15 and 17 on the ground that the statements were privileged under Minn.Stat. § 595.02, subd. 1(g) (1984). The trial court ruled that Gullekson's September 15 statements were privileged.[1] The trial court also ruled that Gullekson's September 17 statements were not privileged because they were made at a meeting not intended to be confidential.

Gullekson was subsequently tried by the court on stipulated facts and found guilty. He appeals from the judgment of conviction.

## ISSUES

1. Did the trial court clearly err in finding that appellant's September 17 statements were not privileged under Minn.Stat. § 595.02?

2. Was the admission of appellant's September 17 statements prohibited by federal or state statutes regarding confidentiality of patient records, by the fifth amendment, the due process clause of the

---

1. Neither party challenges this ruling, and we    therefore express no opinion on it.

fourteenth amendment, or appellant's right to privacy?

## DISCUSSION

### I

Minn.Stat. § 595.02, subd. 1, provides:

Every person of sufficient understanding, including a party, may testify in any action or proceeding, civil or criminal, in court or before any person who has authority to receive evidence, except * * *

(g) A registered nurse, psychologist or consulting psychologist shall not, without the consent of his client, be allowed to disclose any information or opinion based thereon which he acquired in attending the client in a professional capacity, and which was necessary to enable him to act in that capacity.

The evidentiary privileges contained in § 595.02(d) and (g) constitute what the supreme court has termed the "medical privilege." *State v. Andring*, 342 N.W.2d 128, 132 n. 2 (Minn.1984). The medical privilege prohibits only *"evidentiary use"* of communications arising between a patient and his physician, psychologist or registered nurse." *State v. Odenbrett*, 349 N.W.2d 265, 267 (Minn.1984) (emphasis added).

■ In order to exclude evidence under the "psychologist" privilege, the evidence must persuade the trial court to find that (1) a confidential psychologist-patient relationship existed between defendant and the psychologist, (2) during which the psychologist acquired information of the type contemplated by the privilege statute, (3) while attending the patient, and (4) which was necessary for diagnosis and treatment. *See State v. Staat*, 291 Minn. 394, 399, 192 N.W.2d 192, 197 (1971). The presence of third parties during a communication will render the statements nonprivileged under § 595.02(d), (g) unless "the third persons are necessary and customary participants

in the consultations or treatment and * * * the communications were confidential for the purpose of aiding in diagnosis and treatment." *Andring*, 342 N.W.2d at 133. Finally, statements sought to be excluded under the medical privilege must be shown to have been made *only* for the purpose of diagnosis or treatment. *State v. Anderson*, 247 Minn. 469, 477, 78 N.W.2d 320, 326 (1956).

■ Applying these principles, we do not believe the trial court erred in concluding that Gullekson's September 17 statements were not privileged. The staff told Gullekson, before making the September 17 statements, that anything he said would be reported to authorities. Once Gullekson had been told that by the staff, the statements cannot be construed as confidential and made only for the purpose of treatment. It is also doubtful that patients customarily met with Seely, Hawkinson and Amundson together for the purpose of treatment. The trial court was correct in finding the statements not privileged.[2]

### II

■ Gullekson raises numerous claims that were not presented to the trial court. Specifically, he asserts that 42 U.S.C. § 290dd–3 (1982) and its accompanying regulations found at 42 C.F.R. § 2.1 *et seq.*, along with Minn.Stat. § 254A.09 (1984), prohibit disclosure of any information he provided to the staff; that his September 17 statements were involuntary and hence "compelled" within the meaning of the fifth amendment; that he should have been informed of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), at the September 17 meeting; and that the admission of his statements violates the due process clause of the federal constitution. Generally, issues not raised in the trial court, even

**2.** Gullekson argues that treatment staff somehow possessed and breached a duty of confidentiality to him. Certainly the privilege statute does not *create* confidential relationships; it only prohibits evidentiary use of information acquired through *existing* confidential relationships. Minn.Stat. § 595.02 does not foreclose a psychologist from telling a client, prior to any communication, that anything the client says will not be considered confidential.

constitutional ones, will not be addressed on appeal. *Odenbrett*, 349 N.W.2d at 269.

■ Rule 31.02 of the Rules of Criminal Procedure, however, provides:

Plain errors or defects affecting substantial rights may be considered * * * on appeal although they were not brought to the attention of the trial court.

In order to be "plain error" in the reception of evidence, the evidence must have been admitted in violation of a well-established constitutional or evidentiary rule, and not be a matter of trial tactics. *State v. Gruber*, 264 N.W.2d 812, 817 (Minn.1978); *see also United States v. Young*, — U.S. —, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985) (plain error rule applies to "particularly egregious errors").

■ Here, the constitutional claims asserted are certainly not well established. We have found no case, and none has been cited to us, which provides that inculpatory statements made to treatment personnel in a security hospital should be suppressed if not preceded by a *Miranda* warning. Further, while it is clear that involuntary or coerced confessions are suppressible, *State v. Orscanin*, 283 N.W.2d 897 (Minn.1979), the evidence presented to the trial court was not so highly indicative of a coerced or involuntary statement that it was "plain error" for the trial court to admit it when no fifth-amendment claim was asserted.

As to the claimed violation of the federal Alcohol Abuse Act, 42 U.S.C. § 290dd-3, the record is insufficient to support a conclusion that the Act applies.[3] Even if the Act were to apply, this court has already indicated that a violation of the Act does not necessarily require suppression of evidence. *State v. Brown*, 376 N.W.2d 451, 454 (Minn.Ct.App.1985) (construing 42 U.S.C. § 290ee-3, identical to § 290dd-3, dealing with drug abuse programs). While it may be possible to distinguish *Brown*, its language does not compel a conclusion that the trial court committed plain error affect-

ing the outcome of the trial by admitting the statements.

We are not unmindful that the treatment accorded Gullekson has a ring of potential unfairness. However, it would not be beneficial to abjure the rules of proper appellate procedure and engage in an examination of difficult constitutional and statutory claims based upon speculative facts. Therefore, we do not address any of these claims and suggest that the appropriate remedy may be a petition for postconviction relief, in which these claims might properly be examined.

## DECISION

The trial court did not clearly err in finding that statements made by Gullekson to treatment staff were not privileged. Gullekson's other contentions cannot be raised for the first time on appeal.

Affirmed.

CRIPPEN, Judge (concurring specially).

I concur in the decision and analysis stated in the majority opinion. However, the law we apply begs further comment.

The practice here demonstrates circumvention of statutory privilege laws. How does one convert privileged statements to trial court testimony? As was demonstrated here, a second statement is taken, a step facilitated by suggesting to the patient that he has no privilege, either as to his prior statement or the requested second statement. Thus, that which is acquired in confidence is reacquired for public prosecution purposes.

This sabotage of statutory privilege is not my primary concern. It is an issue the legislature will have to consider and resolve. Of much greater concern is the constitutional implications when evidence is gathered by medical personnel.

---

**3.** Gullekson attempts to supplement the record on this point by submitting affidavits of security hospital staff indicating that the hospital receives federal funds. We cannot go outside the record on appeal. Minn.R.Crim.P. 28.02, subd. 8.

The unscrutinized acquisition of a confession by medical personnel is another in an enlarging line of cases where statements are taken in a coercive environment, not in police custody, but where the statements are not deemed to be compelled under the fifth amendment of the United States Constitution or Article I, § 7, of the Minnesota Constitution. *See Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984); *State v. Murphy*, 380 N.W.2d 766 (Minn., 1986). The defendant here was not advised of his right to remain silent. In fact, he was given assurances suggesting he had no such right—that his prior remarks could be used against him and that his further remarks would also be reported. I view these circumstances to be like those in *Murphy*, involving required disclosures to a probation officer. Both cases involve a planned acquisition of admissions previously made in a confidential setting. In my opinion, the medical setting poses a danger of coercion at least as great as that presented by an interview with a probation officer.

Justice Wahl of the Minnesota Supreme Court has detailed the history of decisions under the Minnesota Constitution that put upon the prosecution a burden to show a confession is not the fruit of coercion, to show that the confessor has knowingly and voluntarily chosen to speak. *Id.* at 773 (Wahl, J., dissenting). Prevailing law, however, stated by the majority in *Murphy*, corresponds with the view of the United States Supreme Court in *Minnesota v. Murphy*; so long as police custody is not involved, coercion will normally be recognized only when the right of silence is asserted and overcome.

The majority relies on the absence of settled law on the defendant's constitutional arguments. Indeed, the law on the issue is presently settled against the defendant's point of view. I concur in the application of existing law, but question whether it takes from individuals their constitutional freedom from compelled statements.