William **DAYMUDE**,
Defendant–Appellant,

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 28A01–8902–CR–38.

Court of Appeals of Indiana,
First District.

July 19, 1989.
On Rehearing Sept. 13, 1989.

_____

Trueblood, Harmon, Carter & Cook, Robert F. Hellmann, Terre Haute, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Danielle Sheff, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

BAKER, Judge.

## STATEMENT OF THE CASE

The defendant-appellant, William Daymude (Daymude), brings this interlocutory appeal challenging the trial court's ruling which requires his health care provider to disclose, in a criminal proceeding, otherwise privileged communications made subsequent to a child in need of services (CHINS) order requiring his participation in family counseling and treatment.

We reverse.

## STATEMENT OF THE FACTS

The Greene County Division of the Indiana State Department of Public Welfare (Department) filed a petition in the Greene Circuit Court, Juvenile Docket, pursuant to IND.CODE 31–6–4–10, alleging that Daymude's 13–year–old daughter was a "child in need of services" as defined by IND.CODE 31–6–4–3. As provided by the CHINS statute, the Department, pursuant to court order, provided services to the child and her family. The daughter was admitted as an in-patient at Charter Hospital of Terre Haute (the hospital). In addition, the juvenile court ordered Daymude, the alleged victim, and her mother to undergo family counseling.

The hospital's clinical director referred the daughter's case to James Walker (Walker), a certified clinical mental health counselor working as an independent contractor for the hospital. Walker worked under the supervision of Dr. Mary Anne Johnson, the hospital's chief psychiatrist

for the child and adolescent division. Walker developed and scheduled a treatment program in which the alleged victim and her family were to participate in a series of individual and group therapy sessions. During the course of a counseling session, Daymude disclosed information relating to alleged instances of sexual abuse.

On July 8, 1989, the State formally charged Daymude with child molesting and criminal deviate conduct in violation of IND.CODE 35–42–4–2 and 35–42–4–3, and with the offense of incest in violation of IND.CODE 35–26–1–3. Thereafter, the State sought to depose Walker regarding the content of communications between Walker and Daymude disclosed in the course of the family therapy. Daymude objected to the State's inquiry, insofar as it related to privileged and confidential communications between himself and Walker or any other member of the hospital's treatment team. The question was certified to the trial court and on January 31, 1989, the trial court overruled the defendant's objection and ordered Walker to answer such questions as were asked by the State pertaining to his communication with Daymude during the course of counseling. It is from this order that the instant interlocutory appeal is taken.

## ISSUE

Whether the trial court erred in finding that Daymude's right to privileged communication with his health care provider was abrogated by IND.CODE 31–6–11–8 when that communication was undertaken subsequent to the State's involvement in allegations of child sexual abuse against Daymude, and when that communication was undertaken in the course of treatment and rehabilitation recommended by the State through its Department of Public Welfare.

## DISCUSSION AND DECISION

 Communications between a physician and a patient, of a confidential nature, are privileged and may not be disclosed by the physician without a waiver of that privilege by the patient. _Williams v. Johnson_ (1887), 112 Ind. 273, 13 N.E. 872; _State v. Jaggers_ (1987), Ind.App., 506 N.E.2d 832; _Baker v. Whittaker_ (1962), 133 Ind.App. 347, 182 N.E.2d 442. This physician-pa-

tient privilege is codified in IND.CODE 34–1–14–5 which provides, in pertinent part:

The following persons shall not be competent witnesses:

. . . .

4th. Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases, except as provided in IND.CODE 9–4–4.5–7.[1]

The privilege applies to those communications undertaken in the course of, and necessary to treatment. *Corder v. State* (1984), Ind., 467 N.E.2d 409.[2]

However, in Indiana *"any individual who has reason to believe that a child is a victim of child abuse or neglect shall make a report"* as required by statute (emphasis added). IND.CODE 31–6–11–3. Thus, this language and the physician-patient privilege place conflicting duties upon a physician who learns of child abuse during the course of a physician-patient relationship. Consequently, the Indiana legislature adopted IND.CODE 31–6–11–8 which abrogates the physician-patient privilege when reporting child abuse.[3] The abrogation statute states:

The privileged communication between a husband and wife, between a health care provider and that health care provider's patient, or between a school counselor and a student is not a ground for:

(1) excluding evidence in any judicial proceeding resulting from a report of a child who may be a victim of child abuse or neglect, or relating to the subject matter of such a report; or (2) failing to report as required by this chapter.

*Id.*

■ Daymude acknowledges that Walker, as a mental health professional had a duty under IND.CODE 31–6–11–3 to report suspected or known instances of child abuse or neglect even though such infor-

mation is received in the course of confidential communications. *See* IND.CODE 31–6–11–3 (Duty to Report); IND.CODE 34–1–14–5 (Physician–Patient Privilege); IND.CODE 31–6–11–8 (Abrogation of Privilege). However, Daymude argues that the privilege is abrogated only in reporting child abuse, and that the abrogation does not extend to communications made during counseling ordered by the court as a result of CHINS proceedings.

Because of the special circumstances of this case, this appeal presents an issue of first impression for this court. However, we believe that the purpose of the reporting statutes and decisions from courts facing similar issues clearly support Daymude's contentions here.

The purpose of the Indiana reporting statute is:

[T]o encourage effective reporting of suspected or known incidents of child abuse or neglect, to provide in each county an effective child protection service to quickly investigate reports of child abuse or neglect, to provide protection for such a child from further abuse or neglect, and to provide rehabilitative services for such a child and his parent, guardian, or custodian.

IND.CODE 31–6–11–1. Thus, the reporting statute attempts to promote the reporting of child abuse cases, and thereafter, to provide a mechanism for the investigation of the abuse in order to protect the child and provide rehabilitative services for the child and parents, guardian, or custodian. The abrogation statute as set forth in IND. CODE 31–6–11–8 must be read in light of the purpose of the entire act.

Clearly, confidential communications between a health care provider and his patient are abrogated to the extent that the health care provider must report all suspected or known instances of child abuse. However, to extend the abrogation statute

---

1. IND.CODE 9–11–4–6, formerly 9–4–4.5–7, provides for the abrogation of the physician-patient privilege in certain cases involving chemical tests for purposes of Title 9, Criminal Investigations.

2. Neither party questions the fact that the privilege exists in the present case.

3. In order to receive federal funds for child abuse prevention programs, states have been

required to enact laws providing immunity from prosecution for persons reporting incidents of child abuse. 42 U.S.C.A. § 5103(b)(2)(A) (1984); 45 CFR 1340.1–1. Presumably, the state abrogation statutes similar to Indiana's were enacted to respond to the federal requirements. *See* IND.CODE 31–6–11–7 (immunity); IND.CODE 31–6–11–8 (abrogation).

to information disclosed during Daymude's court ordered counseling goes beyond the purpose of the statute. The statute makes no mention of prosecuting alleged abusers, and instead only discusses means to facilitate the identification of the children who need the immediate attention of child welfare professionals.

Our interpretation of the Indiana reporting and abrogation statutes finds support in decisions by other courts facing similar issues. In *State v. Andring* (1984), Minn., 342 N.W.2d 128, during one-on-one meetings with the medical staff and within group therapy sessions, the defendant disclosed his sexual conduct with two young girls. The State of Minnesota subsequently learned of the disclosures and sought through discovery to obtain the defendant's medical records and statements made to the medical staff. The trial court denied the State's motion for discovery of information from the one-on-one therapy sessions, but granted the discovery motion as to disclosures made during group therapy sessions. The trial court certified to the supreme court the question of whether the disclosures made during group therapy sessions were privileged.

The supreme court reversed the trial court and held "that the scope of the physician-patient privilege extends to include confidential group psychotherapy sessions where such sessions are an integral and necessary part of a patient's diagnosis and

treatment." *Id.* at 134. The court refused to construe the abrogation statute so broadly as to require that the defendant's record from the therapy sessions be turned over in its entirety to the prosecutors.[4] *Id.* at 132. Furthermore, as to the trial court's ruling on the issue of one-on-one therapy, the supreme court stated that reporting was not an issue in the case because the county authorities were aware of the identity of the allegedly abused children. *Id.* at 133. Thus, the supreme court held that "the trial court properly denied discovery of defendant's statements made ... during one-on-one therapy sessions...." *Id.* We agree with the Minnesota Supreme Court's reasoning.[5]

In the present case, the reporting of child abuse is not an issue. The alleged abuse was reported long before Daymude made confidential statements to Walker. In fact the confidential communications arose only after the CHINS proceedings during which the court ordered Daymude to attend and participate in individual and family counseling sessions. Thus, because the alleged abuse had already been reported, the reporting statute's purpose had been served and the physician-patient privilege need not be abrogated further.

There is no question that the family therapy sessions are an integral and necessary part of the patient's diagnosis and treatment. If the physician-patient privilege is denied to those family members involved in

---

4. The abrogation statute interpreted by the Minnesota Supreme Court reads:
 No evidence relating to the neglect or abuse of a child or to any prior incidents of neglect or abuse involving any of the same persons accused of neglect or abuse shall be excluded in any proceeding arising out of the alleged neglect or physical or sexual abuse on the grounds of privilege set forth in section 595.-02, subdivision 1, paragraph (a), (d), or (g). Minn.Stat.Ann. § 626.556, subd. 8 (West Supp. 1989). In analyzing the above statute, the court stated "[a] narrow construction of section 626.-556, subd. 8, which would achieve the purposes of the reporting act without destroying the benefits that result when those who maltreat children seek confidential therapy programs, should be, and hereby is, adopted." *Andring* at 133 (footnote omitted).

5. Contrary to the State's assertions, the Minnesota Supreme Court's later pronouncements in *State v. Odenbrett* (1984), Minn., 349 N.W.2d 265, do not affect the underlying policies of

*Andring.* In *Odenbrett,* the court considered a provision of the Minnesota Child Abuse Reporting Act which *required* a health care provider to disclose certain information in a report to the local child welfare agency. The court relied upon its holding in *Andring,* stating that the reporting act "abrogate[d] the statutory medical privilege to the extent that evidentiary use is made of information required to be contained in the maltreatment report." *Id.* at 268 (citing *Andring,* 342 N.W.2d at 132).
 We do not face a situation where the Indiana reporting act mandates the disclosure of information gained in the course of court ordered counseling. Instead, the State now seeks disclosure of ordinary communications made as part of a therapeutic counseling session. Thus, the Minnesota courts' more general statements of the policies underlying child abuse reporting statutes must guide our analysis rather than the more fact specific holding in *Odenbrett.*

CHINS counseling, then the alleged child abusers will be discouraged from openly and honestly communicating with their counselors. Without open and honest communications between the physician and the family members, the rehabilitative process will fail. Consequently, the child, whom the statute is designed to help and protect, is denied an opportunity for complete rehabilitation. As the *Andring* court stated:

> Once the abuse is discovered, however, the statute should not be construed, nor can the legislature have intended it to be construed, to permit total elimination of this important privilege. The central purpose of the child abuse reporting statute is the protection of children, not punishment of those who mistreat them.

*Id.*

Furthermore, in *State v. R.H.* (1984), Alaska Ct.App., 683 P.2d 269, *rev'd. on other grounds* (1985), Alaska Ct.App., 711 P.2d 558, the court considered a factually similar case. In *R.H.* the defendant's 15–year–old daughter told a counselor she had been sexually abused by her father. The counselor reported the alleged abuse as was required by Alaska's reporting statute. The State found the daughter to be a "child in need of aid." [6] *Id.* at 272. Subsequently, the court ordered that "[a]ll family members shall attend all group and individual evaluative and therapy sessions scheduled by the approved agency." *Id.* at 273.

Approximately one month later, the defendant was charged with the sexual abuse of his daughter. Thereafter, the State of Alaska subpoenaed the court appointed counselor and ordered him to bring a copy of his files concerning the defendant. The defendant claimed that the material was privileged and the trial court quashed the subpoena.

Alaska had an abrogation statute similar to Indiana's and the issue on appeal was whether the physician-patient privilege was abrogated in criminal child abuse cases. The court held that the privilege was not abrogated for the purpose of criminal proceedings. Although the specific reasonings behind the holdings of the *R.H.* court do not apply in the present case,[7] we agree with the court's holding that the physician-patient privilege is not abrogated in criminal proceedings involving child abuse, where the privileged communications resulted from counseling ordered by the court during a CHINS proceeding.

We must also consider our own supreme court's ruling in *Baggett v. State* (1987), Ind., 514 N.E.2d 1244. In *Baggett,* the defendant voluntarily admitted to his wife that he had molested their niece. Subsequently, the defendant and his wife were divorced. Thereafter, the State charged the defendant with child molesting. During the trial, the defendant's ex-wife testified that he admitted molesting their niece. The defendant's counsel failed to object to the testimony on the basis of privileged communication between a husband and wife. *See* IND.CODE 34-1-14-5. Relying upon this failure, the defendant later appealed claiming ineffective assistance of counsel.

This court held that the defendant received ineffective assistance of counsel when his counsel failed to object to the privileged testimony. *Baggett v. State* (1987), Ind.App., 507 N.E.2d 637, *rev'd.* (1987), Ind., 514 N.E.2d 1244. However, our supreme court granted transfer and vacated our holding and stated that "... the privileged communication between a husband and wife is not a ground for excluding evidence in any judicial proceeding resulting from *a report* of a child who may be a victim of child abuse or neglect, or relating to the subject matter of such a report." (emphasis added.) *Baggett* at 1245.

Nevertheless, the specific facts of the present case are distinguishable. The appeal in *Baggett* concerned ineffective assistance of counsel and as a result, our supreme court gave the abrogation statute a general interpretation. The supreme court was not faced with the fact specific application of the statute as under the circumstances of this appeal.

In the present case, the physician-patient privilege arose as a direct result of therapy

---

6. The State of Alaska's "child in need of aid" is the equivalent of Indiana's "child in need of services." *See* Alaska Stat. § 47.10.010 (1988); IND.CODE 31-6-4-3.

7. The Alaska court expressed concerns about the possible violation of the defendant's fifth amendment right against self-incrimination. We are also concerned with the possible infringement of the defendant's fifth amendment rights. However, that issue is not before the court in this case.

ordered by the court during a CHINS proceeding. The privileged communications were made long after the report of the child abuse. Since the abuse already had been reported, the purpose of the reporting statute had been fulfilled. To allow the abrogation of the privileged communication under these specific facts goes beyond the purpose of the statute. Thus, because of the specific facts of the present case, we hold that the physician-patient privilege is not abrogated with regard to confidential communications disclosed by a defendant while participating in counseling sessions ordered by a trial court pursuant to a report of child molesting.

For the above reasons, we reverse the trial court's ruling.

Judgment reversed.

### ON PETITION FOR REHEARING

The State petitions for rehearing claiming that in our opinion of July 19, 1989, *Daymude v. State* (1989), Ind.App., 540 N.E.2d 1263, we erred in finding that the trial court ordered Daymude to undergo counseling.[1]

It is true that the trial court never *ordered* Daymude per se to participate in counseling. Daymude, however, did sign a petition for informal adjustment which was approved by Greene Juvenile Court Judge, The Honorable David K. Johnson. As part of Channon's treatment, the court-approved petition required that Daymude, his wife and Channon participate in family counseling. Further, the petition provided that if Daymude failed to follow the treatment program, the "matter may be referred to the Department of Public Welfare or the Prosecutor for formal Court proceedings." Thus, although the trial court technically did not order Daymude to participate in the counseling, Daymude did participate under the threat of court action. The issue set forth in our opinion correctly characterized the above facts. Accordingly, our decision remains the same.

Petition for Rehearing Denied.

RATLIFF, C.J., and ROBERTSON, J., concur.

---

1. The record was supplemented by affidavits from both parties.