Patrick HAYES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 46A04–9602–CR–71.

Court of Appeals of Indiana.

July 3, 1996.

Transfer Denied Aug. 19, 1996.

Donald W. Pagos, Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos, Michigan City, for appellant.

Pamela Carter, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant-Appellant Patrick Hayes (Hayes) brings this interlocutory appeal from the trial court's order denying his motion to suppress statements and to quash his arrest.

We affirm.

### ISSUES

Hayes raises four issues which we consolidate and restate as follows:

1. Whether the trial court erred in denying Hayes's motion to suppress because the therapist-client privilege was not abrogated.

2. Whether the trial court erred in denying Hayes's motion to suppress because a therapist must advise his or her client of the existence of the Reporting Statute prior to therapy.

### FACTS AND PROCEDURAL HISTORY

On April 24, 1995, Hayes and his wife met with Karen Peterson, a therapist at the Swanson Mental Health Center in Michigan City. At the beginning of the therapy session, Peterson advised Hayes that his therapy sessions would be confidential. Hayes's wife then told Peterson that Hayes was seeking therapy because he had sexually abused her daughter, A.O. (Hayes's step-daughter). During this session, Hayes and his wife discussed Hayes's sexual abuse of A.O.

Following the session, Peterson notified Child Protective Services of the suspected sexual abuse of then 12–year old A.O. The Michigan City Police Department was notified and an investigation ensued. On May 1, 1995, Detective Sue Harrison discussed these allegations with Hayes, his wife and stepdaughter. The following day, Hayes signed a written waiver of rights and was interrogated by Detective Harrison. During the interview, Hayes made incriminating statements.

On June 1, 1995, Hayes was charged by information with three counts of child molesting as Class C felonies [1]. During the discovery process, Hayes became aware that the State intended to use his May 1, 1995, incriminating statements against him at trial. On August 17, 1995, Hayes filed a combined motion to suppress his incriminating statements and to quash his arrest. Following a hearing, this motion was denied. Hayes appeals.

## DISCUSSION AND DECISION

### I. Abrogation of the Therapist–Client Privilege

#### A. Statutory Construction

Hayes contends that the trial court erred in denying his motion to suppress because Peterson's disclosures to Child Protective Services violated the therapist-client privilege. Specifically, Hayes argues that to allow abrogation of the privilege in this case goes beyond the purpose of the statute.

■ In Indiana, "any individual who has reason to believe that a child is a victim of child abuse or neglect shall make a report" as required by statute. Ind.Code 31–6–11–3 (1993) (hereinafter "the Reporting Statute"). Thus, the Reporting Statute applies equally to health care providers and therefore creates difficulties with regard to the physician-patient privilege as set forth in Ind.Code 34–1–14–5 (1993). To reconcile the difficulties raised by the Reporting Statute with regard to health care professionals and the privilege of confidentiality, the legislature abrogated the physician-patient privilege in cases where

a child is a victim of abuse or neglect. *Devore v. State*, 658 N.E.2d 657, 658 (Ind.Ct. App.1995), *reh'g denied, trans. denied; See* Ind.Code 31–6–11–8 (1993) (hereinafter "the Abrogation Statute"). The Abrogation Statute provides in pertinent part as follows:

The privileged communication between:

(2) a health care provider and the health care provider's patient ... is not a ground for excluding evidence in any judicial proceeding resulting from a report of a child who may be a victim of child abuse or neglect, or relating to the subject matter of such a report or failing to report as required by this chapter.

Ind.Code 31–6–11–8(2).

The goal of the Reporting Statute is to "promote the reporting of child abuse cases and to provide a mechanism for the investigation of the abuse in order to protect the child and to provide rehabilitative services for the child and his parents, guardian, or custodian." *Devore*, 658 N.E.2d at 659; Ind. Code 31–6–11–1 (1993). Hayes contends that because he was actively seeking rehabilitative therapy at the time Peterson reported the perceived abuse, her actions frustrated the rehabilitation goal of the Reporting Statute. His argument alludes to the language in Ind.Code 31–6–11–1 that makes providing rehabilitative services to an abused or neglected child and his or her parent a goal of the Reporting Statute.

■ In support of his argument, Hayes cites *Daymude v. State*, 540 N.E.2d 1263 (Ind.Ct.App.1989), *trans. denied*, wherein we held that the defendant's right to privileged communication with his health care provider was not abrogated because the communication was undertaken subsequent to the State's involvement in allegations of child sexual abuse against the defendant, and because the counseling sessions were ordered by the trial court pursuant to a recommendation by the State Department of Public Welfare. *Daymude*, 540 N.E.2d at 1268. *Daymude* is factually distinguishable from the case before us. In *Daymude*, the privileged communications were made long after the initial report of child abuse. The abuse had

---

1. Ind.Code 35–42–4–3 (1995 Supp.).

already been reported and the allegedly abused child had been declared a child in need of services. Therefore, the purpose of the statute had been fulfilled. In the case before us, the purpose of the statute had not been met prior to Hayes's communication and Peterson's disclosure of that communication. The State did not learn of the alleged abuse of A.O. until Peterson reported it, and therefore, the statute was not fulfilled until then. Peterson's disclosure to Child Protective Services did not violate the therapist-client privilege, because the privilege was abrogated.

Our holding today in no way conflicts with our holding in *Daymude*. We continue to adhere to the principles announced in *Daymude;* that is, the purpose of the Reporting Statute is to promote the reporting of child abuse, and where that purpose has already been met, there is no justification for further abrogating the physician-patient privilege.

### B. Must the Report of Abuse Come From a Child?

■ Hayes next contends that the Abrogation Statute does not apply to his situation because the information did not come from a child. Hayes relies on specific language in the Abrogation Statute which states that privileged communication is not a ground for excluding evidence "in any judicial proceeding resulting from a report *of a child* who may be the victim of child abuse." Essentially, Hayes asserts that the Abrogation Statute only applies when the abused child reports the abuse. We disagree.

■ The Abrogation Statute is to be liberally construed to abrogate the privilege so that children may be protected from various forms of abuse, including child molesting. *Devore,* 658 N.E.2d at 658–59 (citing *Davidson v. State,* 558 N.E.2d 1077, 1090–91 (Ind. 1990); *Baggett v. State,* 514 N.E.2d 1244, 1244–45 (Ind.1987)). The trial court did not err in denying Hayes's motion to suppress because the Abrogation Statute applies to information received from any person, including the wrongdoer. *See Devore,* 658 N.E.2d 657 (privilege abrogated for communications between child molest defendant and hospital

employee); *Baggett,* 514 N.E.2d 1244 (husband-wife privilege abrogated for communications between child molest defendant and his wife).

### II. Therapist's Duty to Advise

■ As his final argument, Hayes contends that a therapist must advise a client of the existence of the Reporting Statute prior to counseling. Although Hayes concedes that counseling sessions do not amount to "custodial interrogation" within the meaning of *Miranda*,[2] he argues that the privilege against self-incrimination should be extended to such situations.

■ The Miranda warnings were designed to secure the criminal defendant's constitutional right against compulsory self-incrimination. *Miranda,* 384 U.S. 436, 86 S.Ct. 1602,; *S.A. v. State,* 654 N.E.2d 791, 797 (Ind.Ct.App.1995), *trans. denied.* When an accused is subjected to custodial interrogation, the prosecution may not use statements stemming from custodial interrogation of the accused unless it demonstrates the use of procedural safeguards effective to secure the accused's privilege against self-incrimination. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612; *S.A.,* 654 N.E.2d at 797. The warnings apply only to custodial interrogation because they are meant to overcome the inherently coercive and police dominated atmosphere of custodial interrogation. *Id.* Here, there was no custody, nor was there any type of coercive atmosphere. Furthermore, Miranda warnings need not be given by private citizens. *See Luckett v. State,* 158 Ind.App. 571, 303 N.E.2d 670 (1973) (Miranda warnings speak only to confessions given to law enforcement officers and need not be given by civilians conducting their own investigation).

We note however that *Miranda* is not limited to custodial interrogation by police or agents of the government in all situations. For example, the privilege against self-incrimination has been extended to court-ordered psychiatric examinations if the accused's statements are to be used to prove his future dangerousness in the penalty

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

phase of a capital trial. *See Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). However, the U.S. Supreme Court and the Indiana Supreme Court have recognized that Miranda warnings were not necessary in situations where the accused requested a psychiatric examination. *Buchanan v. Kentucky,* 483 U.S. 402, 422–23, 107 S.Ct. 2906, 2917–18, 97 L.Ed.2d 336 (1987); *Dickson v. State,* 533 N.E.2d 586, 588 (Ind.1989). Although these cases represent an important body of law regarding the privilege against self-incrimination and psychiatric examinations, they are not particularly instructive in the case presently before us because in those cases the defense requested psychiatric evaluation either to pursue treatment pending trial or to raise the insanity defense. Here, Hayes voluntarily sought treatment with an independent source. The *Miranda* court pointed out that a warning is needed to make the defendant aware he is in an adversary system, and not among people acting in his interest. 23 Ill.Dec. at 675, 384 N.E.2d at 469. Hayes was not entitled to Miranda warnings prior to his counseling session with Peterson. *See Taylor v. State,* 659 N.E.2d 535 (Ind.1995) (defendant not entitled to Miranda warnings prior to mental competency examination conducted by state-appointed psychiatrist because examination was requested by the defense).

Because Hayes was not subjected to custodial interrogation within the meaning of *Miranda,* and because Peterson was not a state actor, Hayes's statements made to Peterson were properly admitted.

### CONCLUSION

The Abrogation Statute expressly provides that privileged communication between a physician and his patient is not a ground for excluding evidence in a judicial proceeding resulting from a report of child abuse. Furthermore, because Hayes was neither subjected to custodial interrogation, nor questioned by a state actor, his privilege against self-incrimination was not violated. Accordingly, the trial court did not err in denying Hayes's motion to suppress evidence and to quash his arrest.

The trial court is affirmed in all respects.

STATON, J., concurs.

CHEZEM, J., concurs in result.