**STATE of Minnesota, Respondent,**

v.

**David Gerald ANDRING, Appellant.**

**No. C2–82–294.**

Supreme Court of Minnesota.

Jan. 13, 1984.

C. Paul Jones, Public Defender, Margaret G. LaMarche, Asst. State Public Defender by Mollie G. Raskind, Deputy State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert W. Kelly, Washington County Atty. by William F. Klumpp, Jr., Asst. Washington County Atty., Stillwater, for respondent.

David Feinwachs, John Kingrey, Kristin Carson, Wilson & Walz, Minneapolis, for Minnesota Hosp. Ass'n.

Kathleen A. Meyerle, Minneapolis, for Medical Ass'n and Minnesota Psychiatric Soc.

Marshall H. Tanich, Tanich & Heins, Minneapolis, for Minnesota Psychological Ass'n and Minnesota Psychologists in Private Practice.

James P. McCarthy, Lindquist & Vennum, Minneapolis, for Minnesota Nurses Ass'n.

WAHL, Justice.

Defendant David Gerald Andring is charged with three counts of criminal sexual conduct in the second degree in violation of Minn.Stat. § 609.343 (1982). The two complaints setting out these counts allege that defendant had sexual contact with his 10-year-old stepdaughter and his 11-year-old niece. A hearing was held to consider a probable cause challenge to the complaints. Probable cause was found. Defendant was released on bond, pending trial, on condition that he have no contact with the alleged victims.

Defendant voluntarily entered the Crisis Intervention Unit at Bethesda Lutheran Medical Center (crisis unit) after the probable cause hearing but before trial. A social history of defendant was taken by a registered nurse; the admitting diagnosis was acute alcoholism and depression. During his stay, defendant received one-on-one counseling with staff physicians and other medical personnel. He also participated in a daily 2-hour group therapy session with other patients in the crisis unit, sessions which were supervised by physicians and registered nurses. Those present at the group therapy sessions were informed that such sessions were confidential and that only the staff would have access to information disclosed in the sessions. Defendant related his experience of sexual conduct with young girls (1) during one-on-one counseling sessions with registered nurses and a medical student, (2) during the taking of his social history with a registered nurse, and (3) during group therapy sessions.[1]

The state, in the course of its investigation of the case, learned of inculpatory disclosures made by defendant at the crisis unit. The state then moved for discovery and disclosure of defendant's medical records and statements made to crisis unit personnel. No request for disclosure from non-staff participants in the group therapy sessions was made. The trial court, after an extensive inquiry into the ramifications of the state's motion, denied the state's motion for discovery of statements made by defendant during the taking of his social history and during one-on-one therapy but granted the motion for discovery of defendant's disclosures made during group therapy sessions.

Considering the issue of confidentiality of group therapy disclosures as both important and doubtful, the trial court certified the following question to this court:

Whether the scope of the physician-patient and/or registered nurse-patient

---

1. The trial court found no reason to believe that any minor children other than defendant's stepdaughter and niece were involved in any of defendant's disclosures to the crisis unit's personnel.

privilege is to be extended to prevent disclosures of communications concerning Defendant's sexual conduct with minor children during group therapy sessions, a crime for which he has already been charged, where such group therapy sessions are an integral and necessary part of Defendant's diagnosis and treatment and consist of physicians and/or registered nurses and other patients, who participate in said group therapy sessions and are an aid to Defendant's diagnosis and treatment as well as their own, i.e., are such patients to be considered as agents of the physicians and/or registered nurses and/or do such patients come within the meaning of "being reasonably necessary for the accomplishment of the purpose of such a communication" so as to render the relationship confidential?

In an order directing additional briefing on the certified question, we specifically asked for further analysis of the effect of federal statutes and regulations and the effect of Minn.Stat. § 626.556 (1982) (reporting of maltreatment of minors) on this certified question. At our invitation, amicus curiae briefs were filed by the Minnesota Hospital Association, the Minnesota Nurses Association, the Minnesota Medical Association, the Minnesota Psychiatric Association, the Minnesota Psychological Association and Minnesota psychologists in private practice.

Defendant argues initially that the disclosures requested by the state, including those made during group therapy sessions, are protected by the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment, and Rehabilitation Act Amendments of 1974, § 122(a), 42 U.S.C. § 4582 (1976) (alcohol treatment act) and the regulations promulgated thereunder, 42 C.F.R. § 2.1–.67 (1982) (alcohol treatment regulations). The crisis unit, which offers short-term care for alcohol abusers, is covered by the act because it receives federal funding. The act and regulations provide for confidentiality of the records of patient identity, diagnosis, prognosis or treatment in such treatment centers. 42 U.S.C. § 4582(a)

(1976); 42 C.F.R. § 2.11(*o*) (1982); 42 C.F.R. § 211(e) (1982).

The regulations purport to preempt any state law which may authorize or compel disclosure prohibited by the act and regulations. 42 C.F.R. § 2.23 (1982). The Minnesota Maltreatment of Minors Reporting Act (state child abuse act), Minn.Stat. § 626.556, subds. 3 and 8, requires health care personnel to report suspected child abuse and prohibits the use of the physician-patient privilege to exclude evidence regarding the child's injuries in cases involving child abuse. Do the federal alcohol treatment act and regulations preempt the state child abuse act? Concluding that this result could not have been the intent of Congress, we hold that they do not.

Section 626.556 was enacted in 1975 in response to the requirements of the Federal Child Abuse Prevention and Treatment Act of 1974, 42 U.S.C. § 5101–07 (1976) (federal child abuse act) and the regulations promulgated thereunder, 45 C.F.R. § 1340 (1982) (child abuse regulations). These regulations require that a state, in order to qualify for federal funds for child abuse programs, must enact a statute providing for rather specific methods of reporting child abuse. This statute must be approved by the Secretary of Health and Human Services. 45 C.F.R. § 1340.3–3 and .3–4 (1982). Minnesota enacted the required statute, section 626.556, and receives federal funds for child abuse programs.

The federal child abuse act and the federal alcohol treatment act were enacted in 1974 by the same Congress. Both the child abuse regulations and the alcohol treatment regulations were promulgated by the Secretary of Health and Human Services (then Secretary of Health, Education and Welfare). Section 2.23 of the alcohol treatment regulations prohibits states from enacting statutes to compel disclosure of patients' records made during treatment. Section 1340.3–3 of the child abuse regulations requires states to enact comprehensive child abuse reporting and investigation statutes as a prerequisite to receiving

funds. Neither Congress nor the Secretary could have intended that the confidentiality provisions of the alcohol treatment regulations make the child abuse reporting requirements ineffective.

■ Congress recognized the strong local interest in preventing child abuse and consequently enacted legislation which, while mandating a minimally acceptable child abuse reporting and investigation system, left as much flexibility on the state level as possible. 45 C.F.R. § 1340.1–1 (1982). Whenever Congress acts in areas traditionally reserved to the states (as are both alcohol treatment and child abuse prevention), it is more difficult to find broad preemption. Tribe, *American Constitutional Law*, § 6.25, p. 385 (1978). Not only was Congress aware that it was acting within areas traditionally left to the states, it also recognized that the states were the best level at which to deal with child abuse prevention. Given its awareness of the situation, Congress could not have intended to preempt the very state statutes that it had itself mandated. We hold that the confidentiality of patient records provision of the alcohol treatment act does not preclude the use of patient records in child abuse proceedings to the extent required by Minn.Stat. § 626.556.

What then does the state child abuse reporting act require? Does it totally abrogate the medical privilege,[2] as the state argued to the trial court, or does it only permit evidentiary use of the *objective information* which the act requires to be reported, as defendant contended?

■ A minor maltreatment report, in order to be sufficient under the act, must "identify the child, the parent, guardian, or other person responsible for his care, the nature and extent of the child's injuries and the name and address of the reporter." Minn.Stat. § 626.556, subd. 7 (1982). The statute also provides that, despite a physi-

cian-patient or husband-wife privilege,[3] "[n]o evidence *regarding the child's injuries shall be excluded in any proceeding* arising out of the alleged neglect or physical or sexual abuse." Minn.Stat. § 626.-556, subd. 8 (emphasis added). Certainly, subdivision 8 was meant to allow evidentiary use of the information reported to authorities under the mandate of the reporting act. We do not, however, construe the reporting act so broadly as to require that defendant's record from the crisis unit, which includes confidential statements made to professionals in one-on-one sessions and within group therapy sessions, be handed over, in its entirety, to prosecution authorities.

■ The legislature may well have decided that the need to discover incidents of child abuse and neglect outweighs the policies behind the medical privilege. Once abuse is discovered, however, the statute should not be construed, nor can the legislature have intended it to be construed, to permit total elimination of this important privilege. The central purpose of the child abuse reporting statutes is the protection of children, not the punishment of those who mistreat them. Our legislature expressly recognized this fact in stating the policy behind the reporting act: "to protect children whose health and welfare may be jeopardized through physical abuse, neglect or sexual abuse; to strengthen the family and make the home safe for children through improvement of parental and guardian capacity for responsible child care." Minn.Stat. § 626.556, subd. 1. This policy, which recognizes that the child may return to the same home environment in which the maltreatment occurred, is best effectuated by continued encouragement for child abusers to seek rehabilitative treatment.

■ A narrow construction of section 626.556, subd. 8, which would achieve the purposes of the reporting act without de-

---

**2.** We define the "medical privilege" as comprised of those evidentiary privileges contained in Minn.Stat. § 595.02(4), (7) (1982).

**3.** The trial court and this court interpret the "physician-patient" privilege as used in Minn. Stat. § 626.556, subd. 8, to be the medical privilege which we define in note 1.

stroying the benefits that result when those who maltreat children seek confidential therapy programs, should be, and hereby is, adopted.[4] We hold that the medical privilege is abrogated only to the extent that it would permit evidentiary use of the information required to be contained in the maltreatment report—the identity of the child, the identity of the parent, guardian, or other person responsible for the child's care, the nature and extent of the child's injuries, and the name and address of the reporter.

■ Reporting is not an issue in this case. The Washington County authorities were aware of the identity of the children who were subject to the alleged sexual abuse and had moved to protect the children and to prosecute the defendant. The trial court properly denied discovery of defendant's statements made in the course of the taking of his social history and during one-on-one therapy sessions with registered nurses and with the medical student.

We then reach the question certified to this court pursuant to Minn.R.Crim.P. 29.-02, subd. 4 as to whether confidential group therapy sessions which are an integral and necessary part of a patient's diagnosis and treatment are to be included within the scope of the medical privilege. The troublesome aspect of this question lies in the fact that third parties, other patients and participants in the therapy, are present at the time the information is disclosed. Does their presence destroy the privilege?

■ McCormick, in discussing the issue of whether the presence of third parties renders a statement to a physician nonprivileged, argues that the court should analyze the problem in terms of whether the third persons are necessary and customary participants in the consultation or treat-

ment and whether the communications were confidential for the purpose of aiding in diagnosis and treatment. McCormick's Handbook of the Law of Evidence, § 101 (E. Cleary 2d ed. 1972). Under this approach, we conclude that the medical privilege must be construed to encompass statements made in group psychotherapy. The participants in group psychotherapy sessions are not casual third persons who are strangers to the psychiatrist/psychologist/nurse-patient relationship. Rather, every participant has such a relationship with the attending professional, and, in the group therapy setting, the participants actually become part of the diagnostic and therapeutic process for co-participants.

This point is more fully developed in Cross, *Privileged Communications Between Participants in Group Psychotherapy*, 1970 L. & Soc.Order 191, 196–98, 200–01 (1970):

[T]he chief characteristic of group therapy that distinguishes it from individual analysis is that each patient becomes the therapeutic agent of the others * * *. Effective social interaction within the group is therefore a crucial prerequisite to group therapy. The type of interaction required can only be achieved, however, when group members respond to each other spontaneously, both in their speech and their actions * * *. No group participant would make himself vulnerable to community scorn and loss of spouse, job, or freedom by placing his most secret thoughts before the group, unless he could be assured of confidentiality. * * * [S]ociety should certainly foster a relationship that has an important prophylactic effect and thus shields both society and the patient from the consequences of antisocial behavior. * * [A]lthough there may be occasional losses [of relevant important information] such sporadic occurrences are overshad-

---

**4.** This construction, which is contrary to that reached by the Washington court in *State v. Fagalde*, 85 Wash.2d 730, 539 P.2d 86 (1975), finds support in the Arkansas decision of *Freeman v. State*, 258 Ark. 617, 527 S.W.2d 909 (1975). In *Freeman*, a physician testified about his treatment of the defendant's gunshot wound by describing the location of the wound, the fact

that the bullet had not been removed, and the difficulties of the surgical treatment prescribed. Because the reporting act did not require details of the surgical treatment, the *Freeman* court held that the doctor's testimony about the dangers of removal of the bullet and the failure to remove it should have been excluded.

owed by the potential destruction of the therapeutic relationship.

An interpretation which excluded group therapy from the scope of the psychotherapist-patient privilege would seriously limit the effectiveness of group psychotherapy as a therapeutic device. This would be particularly unfortunate because group therapy is a cost-effective method of psychotherapy in that it allows the therapist to treat a number of patients at the same time. It is also more effective with some patients, who, upon hearing other people reveal their innermost thoughts, are less reluctant to reveal their own. Many commentators agree that the psychotherapist-patient privilege should be extended to include group therapy. *See e.g.,* Smith, *Constitutional Privacy in Psychotherapy,* 49 Geo.Wash.L.Rev. 1, 51–52 (1980); Comment, *The Psychotherapist-Patient Privilege in Texas,* 18 Hous.L.Rev. 137, 161–62 (1980); 2 D. Louisell & C. Mueller, Federal Evidence § 216 (1978); Cross, *Privileged Communications Between Participants in Group Psychotherapy,* 1970 L. & Soc. Order 191. Because the confidentiality of communications made during group therapy is essential in maintaining its effectiveness as a therapeutic tool, we answer the certified question in the affirmative. We hold that the scope of the physician-patient/medical privilege extends to include confidential group psychotherapy sessions where such sessions are an integral and necessary part of a patient's diagnosis and treatment. We reverse the order of the trial court allowing disclosure of defendant's statements made during group therapy.

Certified question answered in the affirmative.

Reversed.

SCOTT, Justice (dissenting).

We should hold that Minn.Stat. § 626.-556, subd. 8 (1982), abolishes the medical privilege in cases involving the sexual abuse of children and that defendant may not claim the privilege with respect to any statements made at Bethesda concerning his sexual activity with minors, regardless of whether the statements were made during group therapy, one-on-one therapy, or to the nurse taking a social history. A brief review of our statutory scheme is appropriate.

The medical privilege exists not by any constitutional mandate, but by virtue of Minn.Stat. § 595.02 (1982), which provides in part:

Every person of sufficient understanding, including a party, may testify in any action or proceeding, civil or criminal, in court or before any person who has authority to receive evidence, except as follows:

\* \* \* \* \* \*

(4) A licensed physician or surgeon, dentist, or chiropractor shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereon which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity; after the decease of the patient, in an action to recover insurance benefits, where the insurance has been in existence two years or more, the beneficiaries shall be deemed to be the personal representatives of the deceased person for the purpose of waiving this privilege, and no oral or written waiver of the privilege shall have any binding force or effect except when made upon the trial or examination where the evidence is offered or received.

\* \* \* \* \* \*

(7) A registered nurse, psychologist or consulting psychologist shall not, without the consent of his client, be allowed to disclose any information or opinion based thereon which he acquired in attending the client in a professional capacity, and which was necessary to enable him to act in that capacity.

I agree with the majority that the statutory privileges recited above extend to statements made during group psychotherapy. It is nonetheless clear that the legislature has completely eliminated the privilege in cases such as this arising out of the sexual abuse of children. Minn.Stat.

§ 626.556, subd. 8, eliminates the medical privilege for evidence concerning a child's injuries in proceedings arising out of the physical or sexual abuse of children:

No evidence regarding the child's injuries shall be excluded in any proceeding arising out of the alleged neglect or physical or sexual abuse on the grounds of either a physician-patient or husband-wife privilege.

In the leading case of *State v. Fagalde,* 85 Wash.2d 730, 539 P.2d 86 (1975), the Washington Supreme Court interpreted a similar statutory scheme in which the legislature had both granted a privilege for those obtaining alcohol treatment and restricted it in child abuse cases. In recognizing this apparent inconsistency, the court said:

[I]t is evident that, in its recent enactments, the legislature has attached greater importance to the reporting of incidents of child abuse and the prosecution of perpetrators than to counseling and treatment of persons whose mental or emotional problems cause them to inflict such abuse.

  \*  \*  \*  \*  \*  \*

\* \* \* These statutes can be reconciled upon the following interpretation: The legislature has expressed an intent to protect the confidentiality of communications made in the physician-patient and psychologist-patient relationship, except where they relate to child abuse; and in this area the interest in discovery of cases of such abuse and in protecting the child from future recurrences is found to be overriding. Prosecution of the offender is contemplated as properly incidental to at least the latter purpose. The interest in encouraging the child abuser to seek treatment is subordinated to this aim.

*Id.,* at 736–37, 539 P.2d at 90 (1975).

I would follow the reasoning of *Fagalde* and hold that the legislature intended to bar reliance on the medical privilege in proceedings arising out of child abuse. The medical privilege is a statutory privilege, not a constitutional right, *State v. Enebak,* 272 N.W.2d 27, 30 (Minn.1978), and the legislature has the power to limit or vary the privilege it has granted. *In re D.M.C. and R.L.R., Jr.,* 331 N.W.2d 236, 238 (Minn.1983). *See* Minn.Stat. § 626.52 (1982) (limiting the privilege for gunshot wounds). The enactment of § 626.556, subd. 3, requiring reporting of child abuse; § 626.556, subd. 4, granting immunity for those making such reports; and § 626.556, subd. 8, eliminating the medical and husband-wife privilege in child abuse cases, reflects a legislative intent that in such cases the courts are to have full access to all relevant facts. It also reflects a legislative understanding of the difficulties of proof ordinarily present in child abuse cases. I would find that the societal interest in protecting children and the loss which comes from depriving the courts of a reliable source of facts necessary for the right decision of cases outweigh the potential injury to the physician-patient relationship and the program.

TODD, Justice.

I join in the dissent of Justice SCOTT.

KELLEY, Justice.

I join in the dissent of Justice SCOTT.