Gerald NELSON, Respondent,

v.

David NINNEMAN, Chisago County Sheriff, Defendant,

David Friederichs, Director, Chisago County Welfare Department, Appellant.

No. C1–85–267.

Court of Appeals of Minnesota.

Aug. 27, 1985.

Daniel P. DeWan, North Branch, for respondent.

James T. Reuter, Chisago Co. Atty., Sue A. Cornelius, Asst. Co. Atty., Center City, for appellant.

Tom Foley, Ramsey Co. Atty., Gary A. Davis, Asst. Co. Atty., St. Paul, for amicus curiae Minnesota County Attorneys Assn.

Heard, considered and decided by FORSBERG, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from summary judgment entered in a declaratory judgment action brought to determine access by the alleged perpetrator to a report of child abuse or neglect. The county appeals the grant of access to records of the county welfare department. Respondent has filed a notice of review of the denial of access to records of the county sheriff and of the amount of attorneys fees awarded him. We affirm and remand in part.

## FACTS

During the summer of 1984, respondent was the subject of a report made pursuant to Minn.Stat. § 626.556 (1984), which governs reporting of the suspected abuse or neglect of minors. Both the county welfare department and the county sheriff have investigated the report and have collected and maintained records of their investigations. The investigations have not been completed and no charges have been filed.

Respondent sent a written request, through his attorney, for access to this data under the Minnesota Government Data Practices Act, Minn.Stat. ch. 13. *See* Minn.Stat. § 13.04, subd. 3 (1984). Both local agencies made timely replies as required by the act. *Id.* On advice of the county attorney, the request was denied as to both agencies.

The trial court, on motion for summary judgment by Nelson, ordered that Nelson should have access to data on the report in the possession of the welfare department, but not data collected and maintained by the county sheriff. It ordered attorneys fees and other costs to be awarded upon application by Nelson's attorney, but not to exceed $200. His attorney submitted an application for attorneys fees in the amount of $2,509.50. The final order for judgment awarded attorneys fees and costs of $200.

## ISSUES

1. Are reports of child abuse or neglect made pursuant to the mandatory reporting act, Minn.Stat. § 626.556, or the records compiled by a county welfare department in assessment or investigation of such reports, available on request to the alleged perpetrator?

2. Did the trial court err in the award of attorneys fees to respondent or in the amount awarded?

## ANALYSIS

### I.

The statute governing access to reports and records made pursuant to the

mandatory reporting law reads, in pertinent part, as follows:

All records maintained by a local welfare agency under this section, including any written reports filed under subdivision 7, shall be *private data on individuals,* except insofar as copies of reports are required by subdivision 7 to be sent to the local police department or the county sheriff. Report records maintained by any police department or the county sheriff shall be *private data on individuals* except the reports shall be made available to the investigating, petitioning, or prosecuting authority. The welfare board shall make available to the investigating, petitioning, or prosecuting authority any records which contain information relating to a specific incident of neglect or abuse which is under investigation, petition, or prosecution and information relating to any prior incidents of neglect or abuse involving any of the same persons. *The records shall be collected and maintained in accordance with the provisions of chapter 13. An individual subject of a record shall have access to the record in accordance with those sections,* except that the name of the reporter shall be confidential while the report is under assessment or investigation. After the assessment or investigation is completed, the name of the reporter shall be confidential but shall be accessible to the individual subject of the record upon court order.

Minn.Stat. § 626.556, subd. 11 (1984) (emphasis added).

The term "private data on individuals" is defined in chapter 13, the data practices act, as follows:

"Private data on individuals" means data which is made by statute or federal law applicable to the data: (a) not public; and (b) accessible to the individual subject of that data.

Minn.Stat. § 13.02, subd. 12 (1984). Respondent argues that the classification of reports of abuse or neglect as "private data on individuals" in § 626.556, subd. 11, is controlling, regardless of whether the reports are to be found in the welfare department or the sheriff's office. Both agencies, therefore, can be required to provide access to their records.

The county contends that once the report is turned over to the sheriff, it becomes "investigative data collected * * * by a law enforcement agency," Minn.Stat. § 13.82, subd. 5 (1984), which is confidential while the investigation is active. *Id.* Confidential data is not accessible to the individual subject of the data. Minn.Stat. § 13.02, subd. 3 (1984).

The trial court did not adopt the analysis of either party. It held that the mandatory reporting law refers to welfare agency records, while the data practices act is controlling as to data maintained by a law enforcement agency. The court held that classification of data, and thus accessibility, depends on which agency is in possession of the data.

The mandatory reporting law, however, does not refer solely to welfare agency files, but states:

Report records maintained by any police department or the county sheriff shall be private data on individuals * * * *.

Minn.Stat. § 626.556, subd. 11 (1984). Moreover, the data practices act makes not only investigative data of law enforcement agencies confidential, but also investigative data of welfare agencies. Minn.Stat. § 13.-46, subd. 3 (1984).

The statute classifies as "private data on individuals," accessible to the subject of the data,

*[a]ll records* maintained by a local welfare agency under this section, including any written reports filed under subdivision 7 * * * *.

Minn.Stat. § 626.556, subd. 11 (1984) (emphasis added). It similarly classifies only "report records" maintained by law enforcement. *Id.* Such a clear distinction between "all records" and "report records" should be given some meaning. *See Transport Leasing Corp. v. State,* 294 Minn. 134, 137, 199 N.W.2d 817, 819 (1972)

(statutory distinctions of language in same context must be presumed intentional).

The reporting law uses the term "report(s)" to refer to the initial report of suspected abuse or neglect. Minn.Stat. § 626.556, subds. 2(e), 3 (1984). Similarly, we take the term "report records" to refer only to the copy or record of the initial report in the law enforcement agency's possession. This is the only data that the law enforcement agency is required to disclose to the subject of the data.

The law enforcement and welfare agencies are required to forward to each other only the initial abuse reports. Subds. 3, 7. The welfare agency may be required to forward follow-up reports to the law enforcement agency. Subd. 11 (must make available such reports to the "investigating" authority). There is no such requirement made of the law enforcement agency. Thus there is no indication in the statute that law enforcement data beyond the initial abuse or neglect report must be present in welfare agency files for potential disclosure to the individual.

The county and amicus contend the trial court reached an absurd result, allowing the alleged perpetrator of abuse or neglect access to every detail of an active criminal investigation, because of the welfare agency's entitlement to the same data. They argue that this result is inconsistent with the policy behind mandatory reporting, that of ensuring the protection of vulnerable children. We do not agree. The statute, as noted above, does not permit access to the criminal investigative file. The limited access it provides is supported by policy considerations stated or implied in the statute.

The statute unequivocally states that reports of abuse or neglect, and all records of the welfare agency following up on such reports, are "private data on individuals," defined in the data practices act as accessible to the individual. Despite the policy arguments of the county and amicus against disclosure, there is no room for judicial construction of the statutory language unless some ambiguity can be found in the language. *Waller v. Powers Department Store*, 343 N.W.2d 655, 657–58 (Minn.1984).

The argument in favor of application of the confidential classification for investigative data found in the data practices act must fail, in part because of the express language in Minn.Stat. § 626.556, subd. 13 (1984):

*Application of data practices act.* The classification of reports and records created or maintained for the purposes of this section shall be determined as provided by this section, notwithstanding any other classifications established by chapter 13.

As the latest provision to be enacted, this statute would prevail. Minn.Stat. § 645.26, subd. 4 (1984). In addition, the mandatory reporting law classification, as the more particular provision, must prevail over the general classification in the data practices act. Minn.Stat. § 645.26, subd. 1 (1984).

Two policy considerations support limited access to abuse or neglect reports and welfare follow-up records. First, one of the purposes of the law is "to strengthen the family." Minn.Stat. § 626.556, subd. 1 (1984). The supreme court has stated as follows:

The central purpose of the child abuse reporting statutes is the protection of children, not the punishment of those who mistreat them.

*State v. Andring*, 342 N.W.2d 128, 132 (Minn.1984). Disclosure of welfare agency records prepared for family court proceedings to determine appropriate intervention in the family is consistent with this purpose. The welfare agency retains authority to take emergency measures to protect against retaliation against the children. Minn.Stat. § 626.556, subd. 10(a) (1984). We are concerned with the adequacy of this protection, but must defer to the legislative determination.

Secondly, the reporting law covers not only persons mandated to report suspected abuse or neglect, but also persons not required to report. Minn.Stat. § 626.556, subd. 3 (1984). All persons, including those

voluntarily making reports, are granted immunity from liability if they act in good faith and exercise due care in making a report. Subd. 4(a). The legislature may have determined that a disclosure provision was necessary to deter false reporting.

Thus, although we do not adopt the trial court's reasoning, we reach substantially the same result. Since the initial report is in the welfare department file which must be disclosed, it is not necessary to order its disclosure by the county sheriff.

## II.

 The trial court initially ordered attorneys fees to be awarded upon application by Nelson's attorney, but not to exceed $200. Following the application, which claimed fees of over $2,500, the order for judgment awarded attorneys fees of $200. The county contends that no fees should have been awarded because the parties merely submitted the legal question of access to data to the court, and there was no active violation of the data practices act. Nelson argues that the court arbitrarily limited fees without consideration of the factors set out in *State v. Paulson*, 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971).

The data practices act provides for attorneys fees and costs not only in actions brought for damages due to violations of the act, but also in actions to compel compliance. Minn.Stat. § 13.08, subds. 1, 4 (1984). Since the information requests were formally denied, the action was essentially one to compel compliance with the act, regardless of how cooperative the parties were in bringing the matter before the court.

Although an award of reasonable attorneys fees may be based upon the court's observation of the services performed, *Larson-Roberts Electric Co. v. Burdick*, 267 Minn. 486, 489, 127 N.W.2d 163, 165 (1964), the court here directed an application detailing the fees claimed. The court should then have made findings on the reasonableness of the hours claimed in light of the work done and the reasonableness of the hourly rate requested.

We do not find relevant to this case the special factors governing awards of attorneys fees under the private attorney general statute, Minn.Stat. § 8.31, subd. 3a (1984). *Cf. Liess v. Lindemyer*, 354 N.W.2d 556, 558 (Minn.Ct.App.1984) (award of fees in consumer fraud action). We remand the issue of attorneys fees for reconsideration following the factors set forth in *State v. Paulson*.

## DECISION

The mandatory reporting law requires disclosure by the county welfare agency to the respondent of all records maintained on a report of abuse or neglect. It requires the county sheriff to disclose only the initial report. The matter of attorneys fees is remanded for review consistent with this opinion.

Affirmed and Remanded in Part.