**STATE of Minnesota, Respondent,**

**v.**

**Terrance James FRIEND, Appellant.**

**No. C7–85–1228.**

Court of Appeals of Minnesota.

April 1, 1986.

Review Denied May 22, 1986.

Hubert H. Humphrey, III, Atty. Gen., Alan L. Mitchell, St. Louis Co. Atty., Brian D. Simonson, Asst. Co. Atty., Hibbing, for respondent.

C. Paul Jones, Public Defender, Jonathan G. Steinberg, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Appellant Terrance James Friend, Sr., was convicted of: (1) intrafamilial sexual

abuse in the first degree and criminal sexual conduct in the first degree of B.S.; (2) criminal sexual conduct in the first and second degree of T.B.; (3) criminal sexual conduct in the first and second degree of M.D.; and (4) criminal sexual conduct in the second and fourth degree of L.N. Appellant claims: (1) the trial court erred by admitting his physician's testimony, which concerned incriminating statements made by appellant; (2) the trial court erred by admitting an oral statement made by appellant, prior to a *Miranda* warning and allegedly while in custody and in response to interrogation; (3) the prosecutor's comments during closing argument and questions during voir dire examination were improper and entitle him to a new trial; and (4) the trial court erred in sentencing him to a consecutive mandatory minimum term of 36 months, pursuant to Minn.Stat. § 609.346 (1984) for the offense of criminal sexual conduct in the fourth degree. We affirm as modified.

## FACTS

In March 1984, Colin Isaacson, a social worker with the St. Louis County Social Services Department received a phone call from Beverly Rudstrom, appellant's sister. Rudstrom stated that she had information regarding the sexual abuse of her niece, B.S., age 11, who had been living with her for a number of years. Rudstrom told Isaacson that she confronted appellant after she learned he had been fondling B.S., that he admitted the fondling and stated that it had gone on about six months. At trial Rudstrom denied making these statements to Isaacson.

After talking with Rudstrom, Isaacson arranged an interview with B.S. at a medical center in Hibbing. Captain William Bussey of the Hibbing Police Department and Rudstrom witnessed the interview behind a one-way mirror. B.S. told Isaacson that appellant touched her crotch and chest and described it as touching in a "bad way." B.S. described and demonstrated the incidents of abuse on anatomically-cor-

rect dolls, which included numerous sex acts, including oral sex and attempts at intercourse. She said appellant touched her on more than 20 occasions and told her not to tell anybody else. B.S. also said that she saw appellant do the same things to C.F., T.B., and M.D.

At trial, M.D., an 11 year old, testified that: (1) she stayed overnight at a trailer in Rudstrom's backyard; (2) the trailer belonged to appellant; and (3) appellant gave her beer and molested her. M.D. then described incidents of sexual abuse by appellant.

Twelve-year-old T.B. was called to the witness stand by the state on three separate occasions. On the first two occasions, she was crying and unable to testify. On a third occasion she described incidents of abuse by appellant in February of 1984. T.B. also testified that appellant would give her money, pot and beer and that she observed appellant performing sex acts on C.F., B.S. and L.N.

Fifteen-year-old L.N. testified that appellant sexually abused her and said he had touched her between 10 and 20 times during the last three years. L.N. also testified that she observed appellant doing the same things to her cousin, T.B., and that appellant would give her beer and pot.

Prior to appellant's arrest, Captain Bussey and Sergeant John Maras of the Hibbing Police Department went to the V.A. hospital in Minneapolis to speak with appellant. Appellant had voluntarily committed himself to the hospital. Bussey told appellant that they were investigating possible sexual abuse of appellant's niece and began setting up a tape player. While Bussey was setting up the tape player, appellant said he did not want to talk about certain things because he knew what he did was "morally and legally wrong," but he had not had "warm feelings like that for a long time" and that he really did not want to say too much because the state would use it to hang him. After the officers finished setting up the tape recorder, they gave appel-

lant a *Miranda* warning and proceeded to take a taped statement from him. They left the hospital without arresting appellant. The trial court suppressed appellant's taped statement but admitted his oral statement—"I knew what I had done was morally and legally wrong, but I haven't had warm feelings like that for a long time."

At trial, Dr. Nancy K. Dessert, a physician and psychiatric resident at the V.A. hospital, testified that while taking a history and physical examination of appellant she asked appellant why he came to the hospital. He said, "I have some trouble with little girls. Myself, I didn't think it was trouble. I just played with them." Appellant told Dr. Dessert that he had been playing with little girls during the past two years.

Dr. Dessert testified that appellant described an instance of touching with a girl named M., which occurred approximately one and one-half years prior to his hospital admission. Appellant also admitted to incidents of touching with his nephew, B. Appellant said he felt a lot of love between him and B. and that B. was special. According to appellant, the incidents with B. occurred 50 times over the past year and a half and in one such instance he had engaged in oral sex.

Appellant also told Dr. Dessert that he had similar incidents of touching with a girl named T. The incidents occurred 10 times during the past year. Dr. Dessert testified that she never told appellant his statements would be confidential. Dr. Dessert also stated that the V.A. hospital does not have a sexual abuse treatment program and that she was not treating appellant for sexual abuse problems.

At trial, appellant testified that he had voluntarily admitted himself to the V.A. hospital because he was depressed, had problems with alcohol abuse and was preoccupied with suicidal thoughts. He also stated he "had a problem about abusing children." However, he denied telling anyone that he was sexually abusing children.

He also denied making certain statements which Dr. Dessert testified to, explaining that Dr. Dessert had misunderstood a number of things. Appellant further denied the incidents with B.S., M.D., T.B., or L.N. and claimed the girls were mistaken in their testimony. Appellant also claimed that personnel at the V.A. hospital told him that what he said would be confidential.

Appellant was convicted and sentenced to: (1) 43 months for the conviction of intrafamilial sexual abuse in the first degree of B.S.; (2) 54 months for the conviction of criminal sexual conduct in the first degree of T.B., with 43 months to run consecutive to the other sentence; (3) 65 months for the conviction of criminal sexual conduct in the first degree of M.D., with 43 months to run consecutive to the other sentences; and (4) 36 months for the conviction of criminal sexual conduct in the fourth degree of L.N., pursuant to Minn. Stat. § 609.346, to run consecutive to the other sentences. The court placed appellant in the custody of the Commissioner of Corrections for a total of 165 months.

## ISSUES

1. Did the trial court err in admitting appellant's physician's testimony that contained incriminating statements made by appellant?

2. Did the trial court err in admitting appellant's oral statement, given prior to a *Miranda* warning and allegedly while in custody and in response to interrogation?

3. Do the prosecutor's comments during closing argument and questioning during voir dire examination entitle appellant to a new trial?

4. Did the trial court err in sentencing appellant to a consecutive mandatory minimum term of 36 months, pursuant to Minn. Stat. § 609.346 (1984) for criminal sexual conduct in the fourth degree?

## ANALYSIS

1. Appellant first claims that the trial court erred in admitting his treating physi-

318

cian's testimony, which contained incriminating statements. The trial court relied upon Minn.Stat. § 595.02, subd. 2(b) in admitting the physician's testimony. Appellant claims the trial court improperly relied upon subdivision 2(b) because this section was added to the medical privilege statute in 1984 Minn.Laws ch. 588, § 4 and did not become effective until April 26, 1984. Appellant's communications with Dr. Dessert were made prior to the effective date of the amendment.

Minn.Stat. § 595.02 provides in relevant part:

> Subdivision 1. Competency of witnesses. Every person of sufficient understanding, including a party, may testify in any action or proceeding, civil or criminal, in court or before any person who has authority to receive evidence, except as provided in this subdivision:
>
> \* \* \* \* \* \*
>
> (d) A licensed physician or surgeon, dentist, or chiropractor shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereon which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity;
>
> \* \* \* \* \* \*
>
> (g) A registered nurse, psychologist or consulting psychologist shall not, without the consent of his client, be allowed to disclose any information or opinion based thereon which he acquired in attending the client in a professional capacity, and which was necessary to enable him to act in that capacity.
>
> \* \* \* \* \* \*
>
> Subd. 2. **Exceptions.** \* \* \*
>
> (b) The exception provided by paragraphs (d) and (g) of subdivision 1 shall not apply *to criminal proceedings arising out of the neglect or physical or sexual abuse of a minor, as defined in section 626.556, subdivision 2,* if the court finds that:
>
> (1) there is a reasonable likelihood that the records in question will disclose material information or evidence of substantial value in connection with the investigation or prosecution; and
>
> (2) there is no other practicable way of obtaining the information or evidence. This clause shall not be construed to prohibit disclosure of the patient record when it supports the otherwise uncorroborated statements of any material fact by a minor alleged to have been abused or neglected by the patient; and
>
> (3) the actual or potential injury to the patient-health professional relationship in the treatment program affected, and the actual or potential harm to the ability of the program to attract and retain patients, is outweighed by the public interest in authorizing the disclosure sought.
>
> No records may be disclosed under this paragraph other than the records of the specific patient suspected of the neglect or abuse of a minor. Disclosure and dissemination of any information from a patient record shall be limited under the terms of the order to assure that no information will be disclosed unnecessarily and that dissemination will be no wider than necessary for purposes of the investigation or prosecution. (Emphasis added.)

Appellant contends: (1) the legislature did not intend Minn.Stat. § 595.02, subd. 2(b) be retroactively applied to communications made prior to its effective date; (2) the section, if applied retroactively, is invalid under the United States and Minnesota Constitutions as an ex post facto law; (3) the section violates federal policy and statutes and is unenforceable; (4) the testimony of appellant's physician was inadmissible under the unamended privilege statute; and (5) the trial court erred in ruling appellant's physician's testimony was admissible under the three-prong test in Minn.Stat. § 595.02, subd. 2(b).

1984 Minn.Laws ch. 588, § 13 provides:

Sec. 13. **EFFECTIVE DATE**

Sections 3, 7, and 8 are effective August 1, 1984, and apply to crimes commit-

ted on or after that date. Sections 2, 4, and 12 are effective the day following final enactment.

Approved April 26, 1984

The exception to the physician-patient and psychologist-patient privilege specified in Minn.Stat. § 595.02, subd. 2(b) is contained in 1984 Minn.Laws ch. 488, § 4. A careful reading of sections 4 and 13 and chapter 588 in its entirety indicates the legislature intended that section 4 apply to "criminal proceedings" commencing on or after April 27, 1984. Minn.Stat. § 595.02, subd. 2(b) states in part: "The exception provided by paragraphs (d) and (g) of subdivision one shall *not apply to criminal proceedings* * * *." (Emphasis added). There is nothing to indicate that the legislature intended that the applicability of the amendment be governed by the date an accused communicated with his doctor, nurse, or psychologist. Since the trial in this matter commenced February 25, 1985, we find Minn.Stat. § 595.02, subd. 2(b) was applicable to the proceeding.

■ Applying Minn.Stat. § 595.02, subd. 2(b) to criminal proceedings commencing on or after April 27, 1984 is not a retroactive application of the amendment. Nor do we find that the application of Minn.Stat. § 595.02, subd. 2(b) to the proceeding is invalid under the United States and Minnesota Constitutions as an ex post facto law. The amendment merely affects what evidence may be admissible in some criminal proceedings. It does not create a new crime or change the standard of proof necessary to find a person guilty of a criminal offense.

■ Even if the application of Minn.Stat. § 595.02, subd. 2(b) to this matter could be interpreted as a retroactive application of the statute, the application is not improper. In *Rom v. Calhoun*, 227 Minn. 143, 34 N.W.2d 359 (1948), the supreme court was faced with a similar question of interpretation. In *Rom,* the issue was whether highway patrolmen who investigated an automobile accident could testify at a civil trial involving the accident. At the time of the accident, a statute precluded admission of the patrolmen's testimony. After the accident but before the trial, the same statute was amended to allow the admission of the patrolmen's testimony. The supreme court rejected the argument that allowing the admission of the patrolmen's testimony pursuant to the amendment would, in effect, be an improper retroactive application of the amendment. Instead, it held that the amendment simply prescribes a rule of evidence, which is applicable to any trial held after the effective date of the amendment. *Id.* at 146, 34 N.W.2d at 361. Similarly Minn.Stat. § 595.02, subd. 2(b) only affects a rule of evidence concerning the application of the physician-patient or psychologist-patient privilege in some criminal proceedings, when certain factors are present. It should be applied to any relevant trial after the effective date of the amendment.

■ Appellant also contends that Minn. Stat. § 595.02, subd. 2(b) violates federal policy and 42 U.S.C. § 290 dd–3 (Supp.1985) and 38 U.S.C. § 4132 (1979), which provide for confidentiality of patient records in federal programs. In *State v. Andring*, 342 N.W.2d 128, 132 (Minn.1984), the supreme court recognized that federal legislation protecting the confidentiality of patient records does not preclude the use of patient records in child abuse criminal proceedings to the extent required by the Minnesota Maltreatment of Minors Reporting Act.

The Minnesota Maltreatment of Minors Reporting Act requires that health care personnel who have reasonable cause to believe a child is being neglected or physically or sexually abused immediately report orally and file a written report thereafter with the appropriate police department, the county sheriff, or the local welfare agency. *See* Minn.Stat. § 626.556, subd. 3 and 7 (1984). The report must have sufficient content to identify the child, the person responsible for the abuse or neglect, if known, the nature and extent of the abuse or neglect, and the name and address of the reporter. *See* Minn.Stat. § 626.556, subd. 7. Dr. Dessert's testimony fell within the parameters of what was to be includ-

ed in a report pursuant to Minn.Stat. § 626.556, subd. 7. We do note that the reporting requirements under subdivision 7 have been expanded to include the identity of the person responsible for the neglect or abuse, if known. *See* 1983 Minn.Laws ch. 345, § 16.

■ In *Andring* the supreme court acknowledged that Congress has recognized that the states are at the best level to deal with child abuse prevention and that it is more difficult to find broad pre-emption whenever Congress acts in areas which are traditionally reserved to the states. Minn. Stat. § 595.02, subd. 2(b) only authorizes disclosure of patient records and communications in limited circumstances and imposes safeguards to protect against unnecessary disclosure. In enacting the provision, the state legislature carefully balanced the important public policy interest of child abuse prevention and prosecution against the confidentiality of patient communications and apparently determined that in some child abuse situations, a patient's confidentiality interest must yield to the state's interest in preventing and prosecuting child abuse. This balancing of interests is further reflected by the requirements imposed by the Minnesota Maltreatment of Minors Reporting Act, which was enacted in response to the requirements of the Federal Child Abuse and Prevention Treatment Act of 1974, 42 U.S.C. § 5101–07 (1976). *Andring*, 342 N.W.2d at 131. As in *Andring*, we must conclude that Congress could not have intended to preempt the limited disclosure of patient records and communications authorized by Minn.Stat. § 595.02, subd. 2(b).

Appellant further contends that the three-prong test for allowing admission of his physician's testimony under Minn.Stat. § 595.02, subd. 2(b) has not been met. The trial court found: (1) the records were necessary and material and of substantial value in connection with the investigation and prosecution; (2) there was no other practical way of obtaining the information or evidence; and (3) the actual or potential injury to the patient-health relationship, the treatment program affected, and the actual or potential harm to the ability of the program to attract and retain patients was outweighed by the public interest in authorizing the disclosure. In reaching these findings the court noted that there was only one patient, as opposed to four young girls who had been sexually abused, and that the V.A. hospital did not have a sexual abuse program. We find the evidence supports the findings and that the trial court's determination that Dr. Dessert's testimony was admissible pursuant to Minn.Stat. § 595.02, subd. 2(b) was not in error.

The state contends Dr. Dessert's testimony was admissible regardless of the applicability of Minn.Stat. § 595.02, subd. 2(b) because of Minn.Stat. § 626.556, subd. 8 (1984). 1984 Minn.Laws ch. 588, § 12 added Minn.Stat. § 595.02, subd. 2(b) and amended Minn.Stat. § 626.556, subd. 8 as follows:

Subd. 8. **EVIDENCE NOT PRIVILEGED.** No evidence ~~regarding the child's injuries~~ *relating to the neglect or abuse of a child or to any prior incidents of neglect or abuse involving any of the same persons accused of neglect or abuse* shall be excluded in any proceeding arising out of the alleged neglect or physical or sexual abuse on the grounds ~~of either a physician-patient or husband-wife privilege~~ *set forth in section 595.02, subdivision 1, paragraphs (a), (d), or (g)*. [Changes indicated by italics.]

Both became effective the day following final enactment. *See* 1984 Minn.Laws ch. 588, § 13.

Minn.Stat. § 626.556, subd. 8 provides that no evidence relating to child abuse or neglect by an accused shall be excluded in any proceeding arising out of the alleged neglect or physical or sexual abuse because of the privileges contained within Minn. Stat. § 595.02, subd. 1(a), (d), or (g). Minn. Stat. § 595.02, subd. 2(b) provides that the privileges under Minn.Stat. § 595.02, subd. 1(d) and (g) do not apply to criminal proceedings arising out of the neglect or physical or sexual abuse of a minor if the court

finds the three factors set forth in the statute.

The rules of statutory construction require that the two provisions should be read together and if possible construed "so that effect may be given to both." Minn. Stat. § 645.26, subd. 1 (1984). However, if the conflict between the provisions is irreconcilable, a special provision shall prevail and should be construed as an exception to the general provision. *Id.*

■ Minn.Stat. § 595.02, subd. 2(b) is a special provision governing the applicability of certain privileges in criminal proceedings arising out of the neglect or physical or sexual abuse of a minor, while Minn. Stat. § 626.566, subd. 8 is a general provision. We find that the privileges contained within Minn.Stat. § 595.02, subd. 1(d) and (g) do not apply to criminal proceedings arising out of the neglect or physical or sexual abuse of a minor, if the court finds the three factors specified in Minn.Stat. § 595.02, subd. 2(b). Minn.Stat. § 595.02, subd. 2(b) must be construed as an exception to § 626.556, subd. 8. *See generally Ehlert v. Graue*, 292 Minn. 393, 397, 195 N.W.2d 823, 826 (1972). Minn.Stat. § 626.-556, subd. 8 is applicable to other proceedings not governed by Minn.Stat. § 595.02, subd. 2. Any other construction would render Minn.Stat. § 595.02, subd. 2(b) meaningless.

2. Appellant claims that his oral statement—"I knew what I had done was morally and legally wrong, but I haven't had warm feelings like that for a long time"— made to police officers while they were setting up a tape recorder for an interview at the V.A. hospital was improperly admitted into evidence.

■ Appellant claims that the oral statement was obtained pursuant to an in-custody interrogation in violation of *Miranda.* The *Miranda* procedural safeguards are required where a suspect is in custody and is subjected to interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). The term "interrogation" is not only ex-press questioning, but also is considered any words or actions by police, which the police should know are reasonably likely to elicit an incriminating response. *Innis*, 446 U.S. at 302, 100 S.Ct. at 1690. We must determine whether appellant's oral statement was voluntarily given, or in response to interrogation or its "functional equivalent."

■ Voluntary statements are admissible into evidence and are not barred by the Fifth Amendment. *Innis*, 446 U.S. at 300–01, 100 S.Ct. at 1689 (quoting *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966)). To determine whether appellant's statement was voluntary, we apply the totality-of-the-circumstances test to the facts found by the trial court. *See State v. Jackson*, 351 N.W.2d 352, 355 (Minn.1984) *appeal after remand* 370 N.W.2d 72 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. August 20, 1985). In *State v. Gabler*, 294 Minn. 457, 458, 199 N.W.2d 439, 440 (1972), the supreme court recognized that a statement admitting guilt, given when a defendant interrupted a detective in the process of giving the *Miranda* warning, was voluntary and not barred by *Miranda.* The supreme court has also rejected the argument that a confession is inadmissible "if it is followed in the same breath with the desire to remain silent." *State v. O'Neill*, 299 Minn. 60, 71, 216 N.W.2d 822, 829 (1974).

■ Our review of the "totality-of-the-circumstances" in this matter indicates that appellant's oral statement was voluntarily given and not in response to interrogation and was thus properly admitted into evidence. *See generally Jackson*, 351 N.W.2d at 355. Simply informing appellant about the subject of the police inquiry before questioning was not an action that police should have known was reasonably likely to elicit an incriminating response. Officers should inform suspects of the crimes about which they will be questioned at the time they are asked to waive their *Miranda* rights. *State v. Beckman*, 354 N.W.2d 432, 437 (Minn.1984). Appellant's oral statement was voluntarily given when

he was under no police restraint. He was not in custody.

3. Appellant claims that the prosecutor's closing argument referring to the jurors as the protectors of young girls, and the voir dire questioning of potential jurors on whether they were familiar with cases in which an accused was charged, acquitted and then subsequently committed additional sexual offenses, injected broader issues than his guilt or innocence into the trial and entitle him to a new trial.

The standards for review of prosecutor misconduct were explained in *State v. Caron*, 300 Minn. 123, 218 N.W.2d 197 (1974):

> The test of determining whether prosecutorial misconduct was harmless depends partly upon the type of misconduct with which we are dealing. * * * Thus, in cases involving unusually serious prosecutorial misconduct this court has required certainty beyond a reasonable doubt that the misconduct was harmless before affirming. * * * On the other hand, in cases involving less serious prosecutorial misconduct this court has applied the test of whether the misconduct likely played a substantial part in influencing the jury to convict.

*Id.* at 127, 218 N.W.2d at 200 (citation omitted; footnote omitted).

■ The prosecution's reference in his closing argument to the jurors as protectors of young girls is improper. *See generally State v. Gaulke*, 281 Minn. 327, 330, 161 N.W.2d 662, 664 (1968). This type of misconduct requires us to determine whether the misconduct likely played a substantial part in influencing the jury to convict. The record reflects that the evidence of appellant's guilt is strong. In view of the entire record, the prosecutor's statement that jurors are the protectors of young girls did not play a substantial part in influencing the jury to convict.

■ We also find that the prosecutor's voir dire questioning of jurors on whether they were familiar with cases in which an accused person had been charged with a sex crime, acquitted and subsequently committed additional offenses, was not misconduct which played a substantial role in influencing the jurors to convict. It appears the prosecution adopted this line of questioning because appellant's counsel was asking jurors whether they were familiar with cases in which children had lied in an attempt to draw an analogy between the case at hand and the Scott County cases.

■ The granting of a new trial based upon prosecutorial misconduct is justified "only where the misconduct, viewed in light of the whole record, appears to be inexcusable and so serious and prejudicial that defendant's right to a fair trial was denied." *State v. Wahlberg*, 296 N.W.2d 408, 420 (Minn.1980). None of the prosecution's comments or voir dire questioning were so serious and prejudicial that they denied appellant's right to a fair trial.

4. Appellant received four consecutive sentences totaling 165 months. Appellant claims the trial court erred in sentencing him to a consecutive mandatory minimum sentence of 36 months for the crime of criminal sexual conduct in the fourth degree, pursuant to Minn.Stat. § 609.346 (1984). Appellant contends the offense should not be considered a "second or subsequent offense" under Minn.Stat. § 609.-346.

Minn.Stat. § 609.346, subd. 3 (1984) provides:

> Subd. 3. **Prior convictions under similar statutes.** For the purposes of this section, *an offense is considered a second or subsequent offense if, prior to conviction of the second or subsequent offense, the actor has been at any time convicted under sections 609.342 to 609.345* or sections 609.364 to 609.3644 or under any similar statute of the United States, or this or any other state. (Emphasis added.)

■ The language in section 609.346, subd. 3 indicates that for an offense to be considered a "second or subsequent offense", for purposes of section 609.346, a defendant must have been *convicted* under sections 609.342 to 609.345 or sections 609.-364 to 609.3644, *prior* to conviction of the

 

second or subsequent offense. In this case, appellant did not have a "prior" conviction under any of the relevant sections at the time he was convicted of criminal sexual conduct in the fourth degree because the charges against him were consolidated for a single trial and appellant was convicted of all the offenses simultaneously.

The state contends that appellant's conviction for criminal sexual conduct in the fourth degree should still be considered a "second or subsequent offense" even though he was convicted of all the offenses at one time. The state claims it was only at appellant's request that the charges were consolidated for trial and the convictions occurred simultaneously, rather than separately, and that, therefore, the criminal sexual conduct in the fourth degree offense actually occurred at a date later than some of the other offenses. However, under the plain language of the statute, the conviction for criminal sexual conduct in the fourth degree cannot be considered a "second or subsequent offense" for purposes of Minn. Stat. § 609.346.

■■■ The presumptive sentence for criminal sexual conduct in the fourth degree, a severity level IV offense, using appellant's criminal history score of 0, is 12 months. Appellant's sentence should be reduced from 165 to 141 months.

## DECISION

The trial court did not err in admitting appellant's physician's testimony pursuant to Minn.Stat. § 595.02, subd. 2(b). Appellant's oral statements made to police officers while they were setting up a tape recorder for an interview was properly admitted into evidence. The prosecutor's questions during voir dire examination and comments during closing argument do not entitle appellant to a new trial. The trial court erred in sentencing appellant to a consecutive mandatory minimum sentence of 36 months, pursuant to Minn.Stat. § 609.346 (1984), for the offense of criminal sexual conduct in the fourth degree. Ap-

pellant's sentence is reduced from 165 months to 141 months.

Affirmed in part and modified in part.