REQUESTED BY: Lawrence R. Myers, Executive Director Nebraska Equal Opportunity Commission
Is the termination of an employee who violated hospital procedure by reporting suspected child abuse by a patient a violation of the retaliation section in the Nebraska Fair Employment Practices Act.
Yes.
The charging party is a LPN who works for a treatment facility for chemically dependent patients. On September 2, 1986, she became aware of an incident of sexual abuse by a patient in the unit as a result of the patient admitting in writing as part of an "assignment" that he had sexually abused his minor son. The charging party was aware of the reporting requirements of Neb.Rev.Stat. § 28-711 (Reissue 1985) which requires all health care professionals and other persons to report or cause to be reported any suspected incident of child abuse or neglect to the proper law enforcement agency. The charging party informed the head nurse of the situation and the head nurse told the charging party she had fulfilled her obligations under the law by reporting the incident to her. The charging party attempted to verify that she had fulfilled her obligations by calling the State Department of Nursing. She was informed by the Department of Nursing that the incident must be reported to law enforcement authorities. On September 4, 1986, the charging party met with the administrative assistant of the institution. The administrative assistant informed the charging party that it was not her duty to report the incident of abuse and that her employment would be terminated if she did report the incident. The charging party was suspended indefinitely at that time. The charging party then contacted legal counsel and was advised to report the incident. Thereafter, the charging party reported the incident to the County Attorney's Office. The charging party was terminated and the hospital admitted that the reason for termination was because she reported the suspected abuse to the County Attorney's Office.
The first issue to be examined is whether the charging party opposed any practice or refused to carry out any action unlawful under federal laws or the laws of this state. Neb.Rev.Stat. § 48-1102(11) (1986 Cum.Supp.) provides "Unlawful under federal law or the laws of this state shall mean acting contrary to or in defiance of the law or disobeying or disregarding the law." Although the head nurse informed the charging party that her obligations under § 28-711 had been fulfilled, the statute provides that the person who has reason to believe an incident of child abuse occurred is responsible for causing a report of the incident to be made. Although the statute does not explicitly provide when the report must be made, the statute created a toll-free number for reporting incidents at any time of day or night. This indicates that immediate reporting is contemplated. Until the charging party knew that someone had filed a report with the proper agency, her obligation under the law was not fulfilled. By asking the charging party to not report the incident, the hospital was asking the charging party to disregard the law.
The hospital contends that the charging party was fired for disobeying hospital policy and that the hospital policy is reasonable. The stated hospital policy is that any staff personnel suspecting a patient to be abusing a child should report the situation to one or more employees who are designated for that purpose. The designated employee then gathers facts, attempts to obtain a written consent from the patient and then determines whether to file a report with a law enforcement agency. There is also evidence that the report would not be made to the law enforcement authorities until the time of the patient's discharge or leave.
The hospital relies on the confidentiality provisions contained at 42 U.S.C. § 290 dd-3(a) (1986). That section provides:
Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to alcoholism or alcohol abuse education, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purpose and under the circumstances expressly authorized under subsection (b) of this section.42 U.S.C. § 290 dd-3(a).
Diagnosis and treatment are defined terms. "The terms `diagnosis' and `treatment' include interviewing, counselling, and any other services or activities carried on for the purpose of or as an incident to diagnosis, treatment, or rehabilitation with respect to drug abuse or alcohol abuse, whether or not conducted by a member of the medical profession." 42 C.F.R. § 2.11(e).
This broad definition would appear to include the "assignment" prepared by the patient as a part of his treatment. The purpose of the confidentiality provisions is to enhance the quality and attractiveness of treatment systems. Additionally, the provisions are intended to protect patient's rights of privacy. 42 C.F.R. § 2.4.
It should be noted that an exception to the confidentiality requirements exists when a patient commits or threatens to commit a crime on the premises of the program or against personnel of the program. This exception provides that a report may be filed with a law enforcement agency, but that the report shall not identify the suspect as a patient. The basis and purpose of this section is to permit protection from, and prompt reporting of, criminal acts. 42 C.F.R. § 2.13-1. In the preface to the first set of regulations issued under 21 U.S.C. § 1175, it was emphasized that the operation of that section "in no way creates a sanctuary for criminals." (37 FR 24636, November 17, 1972). Construing these provisions together, it appears that the section is intended to protect patients from having their names published as a patient for chemical dependency. However, the rules recognize that these provisions should not be used to cover-up criminal activity. Therefore, it cannot be said that charging party's actions were a clear violation of these provisions.
This reasoning was used by the Minnesota Supreme Court in the case of State v. Andring, 342 N.W.2d 128 (Minn. 1984). That case involved a patient in a chemical dependency program who had sexually abused his stepdaughter and niece. The court noted that Congress enacted both the Federal Child Abuse Act and the Federal Alcohol Treatment Act in 1974. The Federal Child Abuse Act requires states to enact comprehensive child abuse reporting and investigation statutes as a prerequisite to receiving funds. The court said "Neither Congress nor the Secretary could have intended that the confidentiality provisions of the alcohol treatment regulations make the child abuse reporting requirements ineffective." Id. at 132.
Furthermore, it should be pointed out that although the hospital claims to have enacted a policy that reconciles these two provisions, it is not a perfect policy. The hospital has stated that it would wait to report the incidents of abuse until the patient is discharged. However,42 U.S.C. § 290 dd-3(d) provides that the confidentiality provisions apply irrespective of whether or when the individual ceases to be a patient.
In conclusion, it appears that the charging party felt she had an obligation under law to report the suspected incident of child sexual assault. This is a fair assessment of the law. The hospital's decision to fire the charging party for this action fits the definition of retaliation contained in Neb.Rev.Stat. § 48-1114(3) (Cum.Supp. 1986).
Sincerely,
ROBERT M. SPIRE Attorney General
Elaine A. Catlin Assistant Attorney General